HECTOR CRUZ ET AL. *v.* EDWARD DREZEK ET AL.

COTTER, LOISELLE, BOGDANSKI, LONGO and HEALEY, Js.

Argued March 8—decision released May 30, 1978

*Joseph T. Sweeney,* for the appellants-appellees (defendants).

*Harold J. Geragosian,* for the appellees-appellants (plaintiffs).

ARTHUR H. HEALEY, J. This is a negligence action brought in two counts. In the first count the minor plaintiff, Hector Cruz, brought the action by his

mother and next friend, Lucia Cruz, seeking damages for personal injuries allegedly received as the result of a fall on July 12, 1970, from a third-floor front porch on premises at 25 City Avenue in New Britain owned by the defendants Edward Drezek and Jeanette Drezek. In the second count Lucia Cruz sought damages for medical and hospital expenses allegedly arising out of this accident. The defendants filed special defenses alleging contributory negligence and assumption of risk on the part of Hector. At the close of the evidence, the court denied the defendants' motion for a directed verdict. No interrogatories were submitted to the jury and the jury returned a general verdict. The case was tried to a jury which first returned a plaintiffs' verdict on both counts, awarding $35,000 to Hector on the first count and $1952.40 to Lucia on the second count. The court did not accept that verdict, but returned the jury to reconsider the verdict as to Hector. Thereafter, the jury returned a plaintiffs' verdict on both counts, awarding $20,000 to Hector on the first count and $1952.40 to Lucia on the second count, which the court accepted. The court denied the defendants' motions to set aside the verdict and for judgment notwithstanding the verdict.

The defendants have appealed, claiming that the court erred in denying their motion for a directed verdict, in refusing to set aside the verdict, and in refusing to render judgment notwithstanding the verdict on the basis of their motion.

The plaintiffs have taken a cross appeal in which they claim that the court erred in refusing to accept the jury's first verdict for Hector and in its further instructions and charge to the jury dealing "with the claimed excessiveness of the original verdict for the plaintiff Hector Cruz."

A motion for a directed verdict is a prerequisite to a motion for judgment notwithstanding the verdict. Practice Book, 1963, § 255; *State* v. *Amara,* 152 Conn. 296, 298, 206 A.2d 438; *Masterson* v. *Atherton,* 149 Conn. 302, 314, 179 A.2d 592. If the court correctly refused to set aside the verdict, it then necessarily follows that it also properly denied the defendants' motion for judgment notwithstanding the verdict. *Douglass* v. *95 Pearl Street Corporation,* 157 Conn. 73, 77, 245 A.2d 129; *Chanosky* v. *City Building Supply Co.,* 152 Conn. 642, 643, 211 A.2d 141. "In reviewing the decision of the trial court on the motion to set aside the verdict and for judgment notwithstanding the verdict, we must consider the evidence in the light most favorable to the plaintiff. *Kopjanski* v. *Festa,* 160 Conn. 61, 63, 273 A.2d 692; *Lewis* v. *Kasimer,* 153 Conn. 13, 15, 211 A.2d 837; see 53 Am. Jur., Trial, § 349." *Bartholomew* v. *Catania,* 161 Conn. 130, 132, 285 A.2d 350. "This court does not favor the direction of verdicts; *Mott* v. *Hillman,* 133 Conn. 552, 555, 52 A.2d 861; and has pointed out that motions to direct should only be granted in exceptional cases; *McWilliams* v. *American Fidelity Co.,* 140 Conn. 572, 578, 102 A.2d 345; and where the circumstances are such that, if the jury had rendered a verdict upon the evidence, the court might properly have set it aside. *Mott* v. *Hillman,* supra." *Gosselin* v. *Perry,* 166 Conn. 152, 167, 348 A.2d 623.

Among the facts which the jury could reasonably have found from the evidence are the following: Hector was fourteen years old at the time of this accident of July 12, 1970. His family consisted of his mother Lucia, two sisters, and himself. About three or four days prior to July 12, 1970, the family met with Edward Drezek and discussed moving on

the coming weekend into the third-floor apartment of the three-family house at 25 City Avenue in New Britain owned by Edward Drezek and Jeanette Drezek. The Cruz family had already paid one month's rent in advance. Edward Drezek, who lived in Bristol, told them to pick up the key from the first-floor tenant. Hector's family picked up the key on Saturday, July 11, and started moving some boxes in that day.

On Sunday, July 12, 1970, Hector was helping his family move into the third-floor apartment which they had rented. Located at the front of the plaintiffs' apartment was an exterior porch facing on City Avenue. This exterior porch was not an enclosed porch and it was exposed to the elements. It was enclosed by railings on two sides and the other two sides were enclosed by the building itself. The control of this porch area was in the defendants. Friends were also helping the Cruz family move in their belongings, and one of them called Hector out onto the porch to help them pull up a mattress from ground level. Hector went out onto the porch where there were three men, and there were two rope ends, with each rope end being held by two persons. Hector was one of the front persons on one of the two rope ends and he and the other front person were standing closer to the porch's front railing than the other two men who were standing back, also holding the rope ends. Hector was standing about six to twelve inches from the front railing just prior to the accident and was holding onto the rope waiting for a man below to tell him to pull on it to haul up the mattress. The last thing which Hector can remember before his recollection of waking up in the hospital is that he was standing between six inches and twelve inches

away from this front railing, holding onto the rope with his hands. Josephine Ehritz, the sole eye-witness to this accident and a neighbor, saw a "small mattress" being raised by a rope and, at this point, she said the railing gave way and "all fell down." According to Mrs. Ehritz, the mattress never got stuck under anything as it was coming up. Hector fell to the ground below. The entire front porch railing also fell, in one piece, to the ground. This front porch rail which gave way and fell measured about nine or ten feet in length and about forty inches in height. The top and bottom parts of this railing were two-by-four pieces of wood and the railing was held in place by nails at each end of the top and bottom parts of the railing. New Britain Police Detective Robert Walsh arrived at the accident scene by car within two or three minutes. Certain photographs of the house, porch and fallen railing, taken at the scene by a police photographer, were in evidence.

The defendants argue that the trial court erred in failing either to direct the verdict or to render judgment for the defendants notwithstanding the verdict because there was not any evidence of any unsafe or defective condition nor of any actual or constructive notice of any such condition pertaining to the alleged porch railing. Essentially, they argue that the evidence was not sufficient to support a finding of negligence by the jury against them.

The defendants were under the duty to use reasonable care to keep those portions of the premises, and specifically the third-floor porch, together with its railings, over which they had control, in a reasonably safe condition. *Douglass* v. *95 Pearl Street Corporation,* 157 Conn. 73, 82, 245 A.2d 129; *Klahr*

v. *Kostopoulos,* 138 Conn. 653, 654, 88 A.2d 332. It was for the jury to determine whether there was in fact such a defective condition. There could be no breach of the duty resting upon the defendants unless they knew of the defective condition or were chargeable with notice of it because, had they exercised a reasonable inspection of their premises, they would have discovered it; *Kirby* v. *Zlotnick,* 160 Conn. 341, 344, 278 A.2d 822; *White* v. *E & F Construction Co.,* 151 Conn. 110, 112, 193 A.2d 716; and it was the defendants' duty to make a reasonable inspection of premises in their control to discover possible defects therein. *Klahr* v. *Kostopoulos,* supra, 655. "We have repeatedly stated that the notice, whether actual or constructive, must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it. *White* v. *E & F Construction Co.,* . . . [151 Conn. 110, 114, 193 A.2d 716]; *New Britain Trust Co.* v. *New York, N.H. & H. R. Co.,* 145 Conn. 390, 393, 143 A.2d 438; *Drible* v. *Village Improvement Co.,* 123 Conn. 20, 23, 192 A. 308." *Monahan* v. *Montgomery,* 153 Conn. 386, 390, 216 A.2d 824. On the question of notice, the trier's consideration must be confined to the defendants' knowledge of the specific condition causing the injury, and such knowledge cannot be found to exist from a knowledge of the general or overall conditions obtaining on the premises. *Kirby* v. *Zlotnick,* supra, 344–45; *Monahan* v. *Montgomery,* supra. Circumstantial evidence is, of course, also available on the question of notice or knowledge of the specific defects, keeping in mind that in an ordinary civil action the party upon whom rests the burden of proof as to a fact or issue has sustained

that burden if the evidence, considered fairly, induces in the trier's mind a reasonable belief that it is more probable than otherwise that the fact or issue is true. *Hennessey* v. *Hennessey,* 145 Conn. 211, 214, 140 A.2d 473. In many cases, including this case, circumstantial evidence is the only evidence available to a party to prove a fact material or essential to his cause of action. *Hennessey* v. *Hennessey,* supra, 215.

Turning to the question of the specific defective condition, the evidence, while contradictory, considered most favorably to the plaintiffs, furnished a reasonable basis for the jury's conclusion, as indicated by their verdict, that the plaintiffs had proven that there did exist at the time of this accident a specific defective condition pertaining to the front porch railing, that that specific defective condition in fact caused Hector's fall and that that specific condition had existed for a sufficient length of time so as to have afforded the defendants an opportunity on a reasonable inspection to discover and remedy it. There is no question but that a plaintiff must remove the issues of negligence and proximate cause from the field of conjecture and speculation. *Cappiello* v. *Haselman,* 154 Conn. 490, 496, 227 A.2d 79; *Badela* v. *Karpowich,* 152 Conn. 360, 362, 206 A.2d 838. There was evidence before the jury which, when considered in the light most favorable to the plaintiffs, supported the verdict.

The following evidence was also before the jury: Detective Walsh of the New Britain Police Department, who had been a policeman for twenty-three years and a detective for sixteen years, arrived at the scene of this accident within two or three min-

utes after receiving a radio call. He learned that two men had fallen from the third-floor porch and had been injured. He testified, with respect to the railing, that the railing, where it pulled away, looked "rotted"; that there were nails sticking out and that the wood "looked rotted; it looked old"; that "the railing had carried away from its anchor, from the nails which anchored it to the side of the building, of the posts"; that when he found the railing, the nails were still in it and that he recalled that some nails were left in the posts upstairs and some stayed with the railing which fell below; and that, with respect to both the railing and posts, the exterior wood was "badly weathered," and that "the paint was chipped away, and where the paint was chipped away the wood was gray from weathering." Mrs. Ehritz, a witness called by the defendants, had lived two houses away for about fifteen years. She testified that the "railing was old and the nails were rusty." When she saw the boys on the porch she yelled to them, "Boys, don't do that. Because the house is old, really old, and the nails are rusty, and don't do that." There was also evidence that the railing was "old" and that the "entire railing" pulled away and fell.

The defendants had purchased this house about ten weeks or two months before this accident. While admitting the house needed a paint job, Edward Drezek claimed it did not need new porches. He applied, however, in November, 1970, for a building permit to repair and enclose three front porches on this house. Before buying this property Edward Drezek personally inspected it. With reference to the third-floor porch, he visually inspected it and specifically checked that porch's railings and bannisters, all of which he claimed were fine.

Frank Costanzo is a foreman for a moving company for which he has worked for fifty years and he has spent at least forty years working on the trucks, helping people to move. He has had "plenty of occasions" to move mattresses and, in the course of his work, ropes have been used many times to pull up mattresses. According to him, this was a customary and common way of handling them because they are otherwise too hard to handle.

While certain evidence was contradictory, the jurors were entitled to believe, among other things, that the railing on this third-floor porch was old and rotted where it joined the posts, that it was thus insecurely attached to the posts, that the defective condition of the railing caused it to pull away from the posts and fall when pressure, not unreasonable in amount, was placed on this railing, and that this condition was the specific defect which caused Hector's injuries.

It is also true that, to charge the defendants with liability, the notice must have been of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect and subsequently in fact producing it.[1] *Monahan v. Montgomery,* 153 Conn. 386, 216 A:2d 824. This was a third-floor porch, and the greater the likelihood of danger, the greater the amount of care required in making an inspection of the premises to meet the standard of due care. *DeSantis* v. *New England Furniture Co.,* 132 Conn. 134, 138, 42 A.2d 792. The controlling question in deciding whether the defendants had constructive notice of the defective condition is whether the condition existed for

---

[1] The defendants requested a charge based on *Monahan* v. *Montgomery,* 153 Conn. 386, 216 A.2d 824, and the trial court charged the jury precisely as requested.

such a length of time that the defendants should, in the exercise of reasonable care, have discovered it in time to remedy it. *Long* v. *Savin Rock Amusement Co.*, 141 Conn. 150, 153, 104 A.2d 221. Given the evidence before the jury, they could reasonably have found that this specific defective condition existed for a reasonable length of time within which the defendants should have learned of it, especially because of Edward Drezek's having been on that porch approximately two months before, just before he bought this property, at which time he looked at the railings, and that a reasonable length of time had passed for remedying the condition of which he should have known. What constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of each case. *Long* v. *Savin Rock Amusement Co.*, supra; *Morris* v. *King Cole Stores, Inc.*, 132 Conn. 489, 494, 45 A.2d 710. The jury had the testimony of Detective Walsh and Josephine Ehritz to weigh, as well as that of Edward Drezek, and the jury were the arbiters of the credibility of all the evidence. *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 359, 294 A.2d 305. On the evidence, including reasonable inferences, the jury could also have reasonably concluded that this specific defective condition of which the defendants were chargeable with notice was the cause of Hector's injuries. A permissible and reasonable view of the evidence by the jury permitted them to find for the plaintiffs. In a civil case a plaintiff is not bound to demonstrate his right to recover, or even to prove it beyond a reasonable doubt, but it is sufficient if the evidence produces in the mind of the trier a reasonable belief of the probability of the existence of the material facts. *Lugdon* v. *Meriden,* 145 Conn. 360, 363, 143

A.2d 157; *Hennessey* v. *Hennessey,* 145 Conn. 211, 214, 140 A.2d 473; *Esserman* v. *Madden,* 123 Conn. 386, 388, 195 A. 739. In considering the evidence, every reasonable and legitimate inference favorable to the plaintiffs fairly arising from the evidence considered as a whole should be entertained by the jury and those facts should be assumed as true which the jury might properly have found from the evidence. *Loukides* v. *United Illuminating Co.,* 160 Conn. 66, 70, 273 A.2d 719. The trial court was not in error in denying the defendants' motion for a directed verdict.

The plaintiffs make two claims of error in their cross appeal. They maintain that the trial court erred in refusing to accept the first verdict for the plaintiff Hector and that it erred in its further instructions and charge to the jury dealing with the claimed excessiveness of the original verdict for the plaintiff Hector.

The jury first returned a plaintiffs' verdict in the amount of $35,000 for the plaintiff Hector and in the amount of $1952.40 for the plaintiff Lucia. The court did not accept the verdict for Hector, but indicated that "at this time the court finds that the verdict of the jury is on the high side. . . . And I am therefore directing . . . that you reconsider the verdict for the plaintiff Hector Cruz." The court stated that in doing so it did not mean "to take away from you your function of bringing in a verdict for the case" and it went on to point out that there were situations where the judge "has a definite feeling that the verdict may be too high or too low." Carefully stating that these are "rare occasions," the court said that it is the obligation of the judge to return the jury for the purpose of reconsidering their verdict. The court made it perfectly clear that

it did not want to tell the jury "what verdict to bring in or how much," and it directed them to reconsider the amount of the verdict for Hector on "the basis that the court considered the verdict for Hector Cruz on the high side." Attention was also called by the court to the medical evidence before the jurors just prior to sending them back to reconsider.

Thereafter the jury again returned to the courtroom at which time a colloquy took place between the court and the forelady.[2] Apparently a question had arisen about whether the jury needed a "new form." The court pointed out that "it all depends" and stated that it would send in a "new form." Again, the court told the jury that it was not trying to bind the jury "as to what your verdict should be or whether you should change it" and at that time also said, "I am expressing my opinion that the verdict is too high under all of the circumstances." It closed by telling the jury that "[i]f you are going to change your verdict, then we will . . . send in to you a new form. If you are going to leave your verdict as it was, then you won't need a new form at this point."

The supervision which a presiding judge has over a verdict which may be rendered is an essential part

[2] The Court: "Ladies and gentlemen, was there some question about you wanted some paper, blank paper for some purpose? Mrs. Page, you are the forelady. I will direct my question to you."

Mrs. Page: "Do we need a new form? That's what our question was."

The Court: "Well, it all depends. What I will do, however, is to send in a new form to you. That doesn't necessarily—I'm not trying to bind you as to what your verdict should be or whether you should change it. I am expressing my opinion that the verdict is too high under all of the circumstances. If you are going to change your verdict, then we will have and we will send in to you a new form. If you are going to leave your verdict as it was, then you won't need a new form at this point."

of the jury system, and that supervision tends to make jurors more careful in reaching their conclusions. *Cables* v. *Bristol Water Co.,* 86 Conn. 223, 224, 84 A. 928. "The control of the court over the verdict of the jury is limited but salutary." *Gillette* v. *Schroeder,* 133 Conn. 682, 686, 54 A.2d 498. General Statutes § 52-223,[3] which permits the court to return a jury to consider their verdict, appropriately employed, is a salutary and effective method of exercising judicial supervision over a verdict which may be rendered by a jury. The practice of returning the jury for further consideration has been followed since *Russell* v. *Bradley,* 4 Day 403, 406, by the authority of § 52-223 and its predecessors. See *Gillette* v. *Schroeder,* supra; *Marini* v. *Wynn,* 128 Conn. 53, 56, 20 A.2d 400. The exercise of the court's power under § 52-223 in returning the jury to reconsider their verdict is not conditioned on the verdict being so unreasonable that, if accepted, it would have to be set aside. *Ryan* v. *Scanlon,* 117 Conn. 428, 436, 168 A. 17. It was quite proper for the court in returning the jury to inform them why they were being returned. *Ryan* v. *Scanlon,* supra. In doing so, the court clearly and correctly instructed the jury that whether they should change the amount or adhere to the verdict as rendered was a question solely for their determination. *Marini* v. *Wynn,* supra. It was within the court's power to return the jury for reconsideration of their verdict to consider whether or not it was excessive; *Twohill*

---

[3] "[General Statutes] Sec. 52-223. JURY MAY BE THREE TIMES RETURNED TO CONSIDER VERDICT. The court may, if it judges the jury has mistaken the evidence in the cause and has brought in a verdict contrary to it, or has brought in a verdict contrary to the direction of the court in a matter of law, return them to a second consideration, and for like reason may return them to a third consideration, and no more."

v. *Kane*, 147 Conn. 191, 193, 158 A.2d 251; and it did not abuse the "large discretion" it had in doing so. *Cables* v. *Bristol Water Co.*, supra, 225. The court was careful not to give the jury the impression that they must return a different verdict and told them that it was their right to persist in that verdict first returned. *Barbieri* v. *Pandiscio*, 116 Conn. 48, 54, 163 A. 469. The court scrupulously observed the province of the jury in its instructions. The latter were not only correct, but stated in language of restraint and clarity. This was an appropriate employment of § 52-223 by the trial court. The court did not err as claimed.

There is no error on either appeal.

In this opinion the other judges concurred.