MEMORANDUM OF DECISION ON DEFENDANT’S MOTION TO STRIKE
GUERNSEY, Chief Justice.
This action arises out of the sale of alcoholic beverages to Plaintiffs decedent allegedly while he was in an intoxicated condition, as a result of which Plaintiff claims her decedent suffered fatal injuries. The cause of action arose on July 5, 2001, and is therefore governed by the provisions of MTO 98-1 rather than the more liberal provisions of the current Torts Code, MTO 2001-07. The Defendant’s liability is predicated on four separate grounds: negligent service or sale of alcoholic beverages to one in an intoxicated condition; negligent failure to supervise the distribution and service of alcoholic beverages and negligent failure to properly train staff to prevent such service to intoxicated individuals; negligent failure to warn Plaintiffs decedent of the danger of his intoxicated condition; and failure to provide a reasonably safe environment. There is no allegation of reckless and wanton serving of alcohol.[1]
The defendant has moved to strike Plaintiffs revised complaint on grounds that notwithstanding the recent recognition of a cause of action for negligent serving of alcoholic beverages in Craig v. Driscoll, 262 Conn. 312, 813 A.2d 1003 (2003), there exists no cause of action by an intoxicated person against the seller of alcoholic beverages for injuries to the intoxicated person, either by statute or in common law negligence.[2] For the reasons *564 stated below, this Court is of the opinion that, while it has the authority to develop Mohegan common law independent of the Connecticut Supreme Court’s development of Connecticut common law, the extension of common law liability so as to allow[7] an intoxicated person to recover damages for the negligent sale of alcohol to him involves social policy considerations that are considerably different from those set forth in Craig v. Driscoll, and as such is best reserved for legislative, rather than judicial, consideration.[3]
AUTHORITY OF THE GAMING DISPUTES COURT
The Plaintiff has asked this Court to carry the development of Mohegan common law beyond that of the State of Connecticut.[4] As the Defendant correctly points out, whether or not the Connecticut Supreme Court will eventually extend liability to allow claims by intoxicated persons for injuries to themselves, as of this point such actions are not permitted. Nolan v. Morelli, 154 Conn. 432, 226 A.2d 383 (1967).
The Gaming Disputes Court is charged with applying and enforcing the substantive law of the Mohegan Tribe, except where preempted by applicable federal law. MTO 95-4, Article III, Section 300. In addition to Mohegan Tribal ordinances and regulations, Tribal Law[7] includes, except to the extent that they may be in conflict with Mohegan Tribal Law, the Connecticut General Statutes, as amended, and the common law of the State of Connecticut interpreting the Connecticut General Statutes.[5]
The Gaming Disputes Court, moreover, is specifically given the authority to develop Mohegan Tribe common law[7] on any question of law. MTO 95-4, Article III, Section 303. In so doing, the Court “shall strive to achieve stability, clarity, equity, commercial reasonableness, and fidelity to any applicable Mohegan Tribal ordinances or regulations”. Id, There is no requirement that the Mohegan common law, as it is further developed, necessarily await the development of Connecticut common law[7].
TRIBAL LAW APPLICABLE TO THE SALE OF ALCOHOL
As the Defendant correctly points out, there is no tribal ordinance specifically dealing with liability for the sale of alcoholic* beverages. Section 14(b) of the Tribal- *565 State Compact between the Mohegan Tribe and the State of Connecticut, provides as follows:
[SJervice of alcoholic beverages with any gaming facility shall be subject to the laws and regulations of the State applicable to sale or distribution of alcoholic beverages.
Given that this case involves a suit by the intoxicated person for injuries to himself, the question of whether this provision in the Tribal-State Gaming Compact incorporates the provisions of Connecticut’s Dram Shop Act, Conn. Gen.Stat. § 30-102, is not directly before this Court.[6]
As to whether or not to follow the Connecticut Supreme Court’s holding in Craig v. Driscoll, the direction to this Court to develop Mohegan common law so as to achieve “stability, clarity, equity, commercial reasonableness and fidelity to any applicable Mohegan Tribal ordinances or regulations,”[7] MTO 95-4 Section 303, combined with the provisions of Section 14(b) of the Tribal-State Gaming Compact, would seem to compel, as both parties have assumed, the acceptance of this common law cause of action in a case involving injury to a third person.[8]
FACTORS TO BE CONSIDERED IN EXTENDING CRAIG V. DRISCOLL
In affirming the Connecticut Appellate Court’s holding in Craig v. Driscoll, 64 Conn.App. 699, 781 A.2d 440 (2001), the Connecticut Supreme Court cited the Appellate Court’s reasoning that alcoholics, like minors, are a “separate class of persons who are unable to deal responsibly with the effects of alcohol.” Craig v. Driscoll, supra, 262 Conn. at 319, 813 A.2d 1003. Plaintiff has urged this Court to extend this reasoning to the instant case.
The Appellate Court’s decision in Craig v. Driscoll, affirmed by the Connecticut Supreme Court, cited with approval former Chief Justice Peters’ dissent in the now-overruled Quinnett v. Newman, which provided in part:
I believe that the time has come for this court to recognize a common law cause of action, sounding in negligence, for the sale of intoxicating beverages to someone who, because of his intoxication, thereafter injures an innocent bystander on our public highways. Studies too numerous to replicate have demonstrated, time and time again, the strong eon- *566 nection between excessive consumption of alcohol and violent traffic accidents, [citations omitted]. The hapless victim in this case was simply another statistic in a long line of similar victims, killed by a driver who, after the consumption of a great deal of liquor at a bar, crossed the median line on the highway and drove his car into oncoming traffic ...
Quinnett v. Newman, 213 Conn. 343, 349-51, 568 A.2d 786 (1990) (Peters, C.J., dissenting). The Appellate Court in Craig v. Driscoll began its analysis with whether or not the defendant purveyor of alcohol in that case owed a duty to the plaintiffs, the mother and brother of a pedestrian struck and killed by the allegedly alcoholic driver served by the defendants. “[0]ur threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised ...” Craig v. Driscoll, 64 Conn.App. 699, 708, 781 A.2d 440 (2001), quoting Clohessy v. Bachelor, 237 Conn. 31, 35-36, 675 A.2d 852 (1996). No cogent reason has been advanced as to why harm to the intoxicated patron by his own actions is any less foreseeable than harm to an innocent bystander.[9]
It, is the second phase of the inquiry, “to make a determination of the fundamental policy of the law, as to whether the defendant’s responsibility should extend to such results”, Clohessy v. Bachelor, supra, 237 Conn. at 45-46, 675 A.2d 852, that militates against judicial extension of Craig v. Driscoll to injuries suffered by the intoxicated person himself. It was the “rational wave of revulsion [that has] arisen against the frightful tragedies caused by drunken drivers”, Quinnett v. Newman, supra, 213 Conn, at 354, 568 A.2d 786 (Hull, J., dissenting), that led to the overruling of Quinnett v. Newman,[10] The effect of extending the holding of Craig v. Driscoll so that intoxicated persons who suffer personal injury will have a cause of action against those selling alcoholic beverages to them is certainly no incentive for those persons to stop drinking. Whether the additional protection afforded the public by making purveyors of alcohol more cautious in serving intoxicated persons outweighs the danger of encouraging those consuming the alcohol to continue to do so, by giving them a cause of action against the seller in the event they suffer personal injury, involves a balancing test better performed in a legislative, rather than judicial, setting.
“The purpose of a motion to strike is to ‘contest ... the legal sufficiency of the allegations of any complaint ... to state a claim upon which relief can be granted.’ In ruling on a motion to strike, the court is limited to the facts alleged in the complaint.[11] The court must construe *567 the facts in the complaint most favorably to the plaintiff.” Novametrix Medical Systems, Inc. v. The BOC Group, Inc., 224 Conn. 210, 214-215, 618 A.2d 25. 224 Conn. 210, 618 A.2d 25 (1992), quoting Gordon v. Bridgeport Housing Authority, 208 Conn. 161, 170, 544 A.2d 1185 (1988).
Accordingly, Defendant’s motion to strike Plaintiffs revised complaint is granted as to the causes of action set forth in Paragraphs 7a, b, c, e, and f, and denied as to Paragraph 7d.

. Whether or not the sovereign immunity of The Mohegan Tribe has been waived under the restrictive provisions of MTO 98-1 with respect to claims of recklessness, rather than negligence, would present a case of first impression for this court.

. The allegation regarding unsafe environment is not directly addressed by the Defen *564 dant's motion.

. “All legislative and executive powers of the Mohegan Tribe not granted to the Council of Elders shall be vested in the Tribal Council ..." Constitution of the Mohegan Tribe of Indians of Connecticut, Article IX, Section I.

. In Craig v. Driscoll the Connecticut Supreme Court stressed that it was not directly addressing the question of "whether to recognize an action at common law on behalf of an intoxicated person against a seller of alcoholic liquor”. 262 Conn. 312, n. 14, 813 A.2d 1003 (2003),

. It has been generally assumed that under MTO 95-4 Section 300(b) Connecticut common law, except to the extent that it conflicts w'ith Mohegan Tribal Law, is one of the sources of Tribal Law. The actual language of the ordinance, however, appears to refer only to Connecticut decisional law' interpreting the Connecticut General Statutes, rather than to Connecticut common law. The difference is illustrated in the Craig v. Driscoll decision, which, inter alia, found that the common law negligence cause of action newly recognized did not conflict with Conn. Gen.Stat. § 31 — 102. It is doubtful that the ordinance intended that the Gaming Disputes Court distinguish between common law and decisional law interpreting the General Statutes, and apply only the latter, given the interrelationship of the two both under Connecticut law and Mohegan law (tor example, the recognition of common law torts in the revised Mohegan Torts Code, MTO 2001-07).

. While it would seem that Section 14(b) would necessarily incorporate Conn. Gen. Stat. § 30-102, the issue of whether the same constitutes a waiver of the sovereign immunity of the Mohegan Tribe is not addressed, and it should be noted that Section 3(g) of the Tribal-State Gaming Compact provides: "The Tribe shall not be deemed to have waived its sovereign immunity from suit with respect to [torts claims of patrons] by virtue of any provision of this Compact.”

. The only other Tribal Ordinance discovered by the Court is MTO 2000-05, establishing the Liquor Control Code. This Ordinance regulates the issuance of tribal liquor licenses, deals with matters such as the hours and days when alcoholic beverages may be sold, and gives the Mohegan Tribal Gaming Commission primary regulatory authority over the Code. As for policy, sales to minors are forbidden, as is discrimination by reason of race, color, or creed. MTO 2000—05 Section XI(6)-(7). The Code specifically does not waive the sovereign immunity of The Mohegan Tribe. MTO 2000-05 Section XVII.

. In Craig v. Driscoll, supra, the Connecticut Supreme Court held that the Connecticut Dram Shop Act was not intended to preclude a common law negligence actions against the sellers of alcohol on grounds of preemption, and that the holding in Quinnett v. Newman, 213 Conn. 343, 568 A.2d 786 (1990) to the contrary ignored the Court’s holding in Kowal v. Hofher, 181 Conn. 355, 436 A.2d 1 (1980) on the issue of preemption, and that Quinnett should be overruled.

. See Est. of Kelley v. Moguls, Inc., 160 Vt. 531, 535, 632 A.2d 360 (1993). The Vermont Supreme Court’s reliance on the Vermont comparative negligence statute, 12 V.S.A. § 1036, to apportion fault does not address in anv substantive way the goal of protecting o( the public from intoxicated drivers.

. See Craig v. Driscoll, supra, 262 Conn. at n. 17, 813 A.2d 1003 for the Supreme Court’s citation of National Highway Traffic Safety Administration statistics as to the suffering and cost caused by accidents involving intoxicated persons.

.During oral argument, and in his brief, Plaintiffs counsel indicated that the facts of this case may call into question whether the consumption of alcohol by Plaintiff’s decedent was voluntary, in view of the claim that Plaintiff's decedent had a blood alcohol content at the time of his death that was over five times the legal limit for the operation of a motor vehicle. Plaintiffs complaint does not contain any allegation that the Plaintiff’s dece *567 dent was an alcoholic or that the consumption of alcohol was not voluntary.