WILSON, Judge.
Plaintiff brings this action pursuant to the Mohegan Torts Code, MTO 2001-07 seeking to recover for damages for personal injuries allegedly sustained when he fell over an empty wheelchair at the Mohegan Sun Casino, a gaming facility under the possession and control of the Defendant. Plaintiff alleges that on March 24, 2003 he was a patron at the casino playing poker at the card table in the casino poker ai'ea. When he got up to leave, he alleges, he tripped over an empty wheelchair, causing the Plaintiff to fall and sustain injuries. He alleges the injuries were caused by the negligence of the Defendant in failing to inspect and maintain the area in a safe condition; failing to place warning signs or barriers to prevent the Plaintiff from using the area in question; failing to train its employees in safety procedures; and in permitting the condition of the wheelchair to exist for such a period of time that the Defendant knew or should have known of the existence of the wheelchair blocking the exit way of poker patrons and failing to remedy and correct the same.
The Defendant answers denying the operative allegations of the Plaintiffs complaint and alleging affirmatively that the Plaintiffs injuries were caused by his own negligence in failing to make a reasonable observation of his immediate surroundings, walking into an open and obvious object, failing to be observant of his surroundings, and failing to make reasonable use of his senses and faculties. The Plaintiffs reply denied that he was contributorily negligent.
At trial, the Plaintiff testified (through an interpreter) that he was a frequent patron of the casino. He had been there perhaps one hundred to two hundred times to play poker. On the night in question, he was seated at a poker table (a semicircular, or “half-moon” table) for about twenty minutes or more. There were six or seven other patrons at the table. At some point, a disabled man came and sat next to him. The Plaintiff decided to get *311 up to go to another table. (He was at what he called the second table and he wanted to go to the third table). He got up with his hands full of chips and said to another person “save that spot,” and that was when he fell. He testified that he did not see the wheelchair, but that the chair was owned by the person sitting next to him. He stumbled over the wheelchair and fell to the floor, sustaining personal injuries. He testified that he didn’t see the disabled man sit down, that he didn’t see the wheelchair, and that he didn’t take any steps before he stumbled and fell.
The Defendant’s Director of Risk Management testified that the casino is visited by some 5,000-10,000 people per day, some of whom are in wheelchairs. She has had training concerning wheelchairs, and they would remove any unoccupied wheelchairs out of the path of a patron. The casino complies with the Americans with Disabilities Act in regard to handicapped persons.
The Plaintiff did not offer any further evidence bearing on the claimed negligence of the Defendant. The Plaintiffs argument as to this point is essentially that the Defendant should have warned the Plaintiff of the presence of the wheelchair, or made provisions to have the wheelchair removed.
The Defendant’s case in chief comprised a video tape replay of the Plaintiffs stumble and fall over the wheelchair, and of the care and attention taken of the Plaintiff by the Defendant’s emergency medical personnel thereafter.[1] The content of the tape will be discussed hereafter.
THE MOHEGAN TORTS CODE
 The Mohegan Torts Code, MTO 2001-07 is the exclusive remedy for the recovery of damages in tort. It provides in relevant part that a “tort” means an injury to a person caused by a breach of a legal duty to that person; a “duty” means an obligation to conform to a particular standard of conduct; and that “negligence” means conduct that falls below the standard established by law or custom for the protection of others against unreasonable risk of injury or harm. The standard of conduct to which a person must conform to avoid being negligent is that of a reasonable person under similar circumstances. Sec. 5.A.8, 15, 20. The code also provides that a claimant shall recover nothing if his contributory negligence is determined to be greater than fifty-percent (of any negligence of the Defendant.) Sec. 9.E. In short, the Defendant owes the duty to invitees to exercise reasonable care to keep the premises reasonably safe for reasonably anticipated uses. Wright, Fitzgerald & Ankerman, Connecticut Law of Torts, Sec. 49 (3d ed.1991).
Having considered the evidence, the Court finds the issues for the Defendant. There was no evidence as to how long the wheelchair had been in the area or that the Defendant knew or should have known of its presence at that location. Indeed, the Plaintiff testified that he himself did not know how long it had been there. There was no notice to the Defendant of any dangerous condition of which the Defendant should have warned the Plaintiff or which the Defendant should have remedied. Further, it would be unreasonable for the Defendant to require disabled persons to “check” their wheelchairs at some remote location.
In the instant case, the Plaintiff adduced no evidence, by way of direct evidence, *312 expert opinion testimony, or otherwise, that the Defendant breached any legal duty which it owed to the Plaintiff. There was no evidence of any “particular standard of conduct” to which the Defendant was obliged to conform other than the common law standard for the protection of invitees against unreasonable risk of injury or harm. On the facts here, the Defendant conformed to the standard of conduct of a reasonable person under similar circumstances.
The presence of the wheelchair in the open was an obvious condition, as distinguished from a cause, of the Plaintiffs fall. Mahoney v. Beatman, 110 Conn. 184, 195, 147 A. 762 (1929). In this respect, it was like the sign in the open in Paladino v. Mohegan Tribal Gaming Authority, GDTC-T-02-162, 4 Am. Tribal Law 577, 2003 WL 25795201 (2003).
Based on the foregoing, the Court concludes that the Plaintiff failed in his burden of proving that the Plaintiffs injuries were caused by any negligence of the Defendant. It is therefore not necessary to determine to what percentage degree PlaintifPs negligence contributed to his injuries. The following, however, is to be noted. On his direct examination, in response to the question of how many steps he took before he fell over the wheelchair, the Plaintiff testified that he took none. On cross-examination, he testified that he did not take one-step. In his deposition testimony, (which was admitted as a full exhibit), he testified that he did not take one-step before he tripped on the chair: “Not one. Not one.” (p. 20). Further: “The fact is that I didn’t even stand up. I fell right away.” (p. 21). The videotape of the incident, however, demonstrates that the Plaintiff not only stood up, but he turned around to face in the direction of the chair and took at least two steps before he stumbled over the chair and fell. It appears from the video, and it is so found, that the Plaintiff failed to make a reasonable observation of his immediate surroundings, that he walked into an open and obvious object, and that he failed to be observant of his surroundings as he left the gaming table. The Plaintiff, therefore, “failed to exercise reasonable care, not only to avoid known dangers, but to discover those to which his conduct might expose him, and to be watchful of his surroundings. Krupien v. Doolittle, 117 Conn. 534, 538, 169 A. 268 (1933).” Schupp v. Grill, 27 Conn.App. 513, 518, 607 A.2d 1155 (1992).
Judgment may enter for the Defendant.

. The tape was taken on one of numerous video surveillance cameras, which the Defendant has stationed at locations throughout the casino and adjacent areas. The videotape was admitted into evidence as a full exhibit.