DECISION ON APPEAL
GUERNSEY, C.J.
In this case claiming damages for personal injuries, brought under the Mohegan Torts Code, MTC § 3-241 et seq., there was never any dispute that the Plaintiffs car slid into a light pole as the result of black ice present on an exit ramp from one of the parking garages at the Mohegan Sun Casino. In its appeal from the judgment of the Gaming Disputes Trial Court in favor of the Plaintiff, The Defendant Mohegan Tribal Gaming Authority (MTGA)[1] has raised four issues. Of these, two are essentially evidentiary in nature,[2] but the remaining arguments raise significant issues as to the applicability of the “specific defect” rule in actions involving constructive notice, the proper application of the “totality of the circumstances” doctrine, and the extent to which the Trial Court did or did not apply existing law.[3] Inasmuch as we find the Trial Court’s decision to be ambiguous as to the standard that it applied, the case will be remanded for articulation by the Trial Court of the basis for its decision.
I
FACTUAL BACKGROUND
Late in the evening of March 2, 2007, the Plaintiff Reginald Crenshaw was operating a 2007 Buick Lucerne on the level two exit of the Riverview Garage at the Mohegan Sun Casino when he encountered black ice on the exit ramp, causing his vehicle to slide into a light pole. There was no evidence of fatigue or impairment on the part of the Plaintiff, according to the testimony of Mohegan Tribal Police *97 Officer Ken Smith, who arrived at the scene at 11:27 p.m. and noted that the “road was ice; it had turned to ice.”[4] The officer observed the slippery condition of the road and called in a request that the roadway be salted “[bjecause the roadway was slippery and I wanted to avoid any other accidents there.”[5] Officer Smith described the condition he discovered as follows:
Q. And what was the condition of the exit ramp?
A. It was coated with black ice at the time of the accident and it’s on a grade and it curves to the left also.
Q. You don’t know if the whole ramp was covered or was this—do you recall?
A. When I got there because I came up a different way, from where I started from where the overpass was it was just glare ice and you had to be careful above it also, above the accident scene.[6]
Officer Smith testified on cross examination that this was the “first indication that we had any—any kind of a problem on the roadway because it was our first accident on site for me to respond to. And when I got out there, then I noticed what the road conditions were like.”[7]
To establish constructive notice of this admittedly dangerous condition, the Plaintiff relied on the testimony of Michael Clang, Grounds Supervisor for the Mohegan Sun Casino, and a meteorologist, Gary Lessor. According to Clang, there was no written policy regarding inspection for ice, and the employees who are emptying trash cans in the parking lots (not in the garages) are verbally instructed by Mr. Clang to “[ljook for ice.”[8] On the night of this accident, there were two such employees (rather than the usual three) on duty until Mr. Clang was called in to work at 11:00 p.m. Following this testimony, a curiously vague interchange then took place concerning prior accidents at the same location:
Q. What is your understanding of how the accident that took place, what do you know?
A. Just what you guys have said, that it was icy that night and he went off the road.
Q. At where?
A. Outside of the Riverview garage.
Q. (Unintelligible).
A. Correct.
Q. And are you familiar with other people going off the road there?
A Yes.
Q. And how many times has that happened that you are aware?
A. I couldn’t give you a—
Counsel for the MTGA thereupon objected on grounds of relevancy, which objection ultimately was overruled, the witness’ recollection was refreshed from the transcript of his prior deposition, and the number finally established as “more than five.”[9] Whether the witness was responding to the plausible, implied basis of the questioning, i.e., that counsel was asking about other accidents involving vehicles sliding on ice (the subject of the witness’ immediately preceding answer), as the Trial Court interpreted the question,[10] or re *98 sponding to an inquiry about accidents in general, cannot be known for certain. There was no follow-up by either counsel on this issue, and no objection was made by the Defendant on the basis of lack of foundation for the admission of evidence of prior accidents. Clang was clear, however, that the place where the accident occurred was a ramp, on a curve, going uphill, and subject to slippery conditions “if things ice over”.[11]
As for meteorological evidence, the Plaintiffs expert was Gary Lessor, Assistant to the Director of Meteorological Studies and Weather Center at Western Connecticut State University, whose qualifications were stipulated to by the parties. As to the time of freezing, Lessor testified that “sometime between 10:17 and 11:00 o’clock likely anything that had been on the surface or brought across the surface would have frozen”. This was clarified as being “very likely” before 11:00 o’clock, which was further clarified as “I’m actually kind of being conservative by saying up until 11:00 o’clock.” [12] As to the formation of black ice, Lessor testified as follows:
Q. Once the temperature drops below freezing, how long does it take for black ice to form?
A. Black ice is funny because it could just happen almost instantaneously. The temperature gets to 32 degrees and everything just freezes up, and, you know, you’re driving down the road, everything is fine, and then within an instant everything just becomes ice.
Q. And it would have happened before 11:00 o’clock, is that what you’re saying”
A. Very likely.[13]
II
DISCUSSION
With the exception of its repudiation of the “mode of operation” basis relating to constructive notice, the Mohegan Torts Code’s definition of negligence, particularly as applied in the context of constructive notice, has repeatedly been interpreted by this Court to be consistent with Connecticut common law.[14] Alday v. Mo- *99 began Tribal Gaming Authority, 1 G.D.A.P. 25, 6 Am. Tribal Law 476 (2005) (upholding the Trial Court’s application of the “specific defect rule”); Espinosa v. Mohegan Tribal Gaming Authority, 2 G.D.R. 66, 5 Am. Tribal Law 309 (2004).[15] The status of the Plaintiff as business invitee is unchallenged, and the Defendant therefore had a duty to keep the premises in a reasonably safe condition. Riccio v. Harbour Village Condominium Association, Inc., 281 Conn. 160, 163, 914 A.2d 529 (2007). “[I]n the context of a negligence action based on a defective condition on the defendant’s premises, ‘[t]here could be no breach of the duty resting upon the defendants unless they knew of the defective condition or were chargeable with notice of it ... ’ ” Id., quoting Cruz v. Drezek, 175 Conn. 230, 235, 397 A.2d 1335 (1978).
In the instant case, there is no alleged affirmative act of negligence on the part of the Defendant that is claimed to have created the unsafe condition, such as would allow the inference of knowledge thereof, Meek v. Wal-Mart Stores, Inc., 72 Conn.App. 467, 474, 806 A.2d 546, cert. den., 262 Conn. 912, 810 A.2d 278 (2002), nor is there any claim or evidence of actual notice. The oft-repeated test for establishing constructive notice is “[w]hether the condition had existed for such a length of time that the defendant’s employees should, in the exercise of due care, have discovered it in time to have remedied it.” Morris v. King Cole Stores, Inc., 132 Conn. 489, 493, 45 A.2d 710 (1946). As Judge Corradino has observed, “[g]iven the nature of the constructive notice issue it goes without saying that circumstantial evidence can prove constructive notice” Vidro v. Cedar Hill Apartments, L.P., 2008 WL 5573001 (Conn.Super.2008); Morris v. King Cole Stores, Inc., 132 Conn. at 192-93, 45 A.2d 710.
This notice, whether established by direct or circumstantial evidence, however, “must be of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect and subsequently in fact producing it.” Long v. Savin Rock Amusement Co., Inc., 141 Conn. 150, 104 A.2d 221 (1954). Accurately described by Judge Corradino as “the traditional rubric”,[16] it is the Defendant’s claim of error that the Gaming Disputes Trial Court failed to adhere to this “specific defect” rule, and Plaintiffs approval of the same (or, more accurately, his claim that it did not apply to this case) that forms the central issue in this appeal.[17]
We begin by noting that this aspect of constructive notice, despite its conceptual difficulties [18] is so well-established *100 in Connecticut law[19] that its abandonment by this Court should be considered only in exceptional circumstances, such as might arise from the possibly unique circumstances of the operation of the Mohegan Sun Casino, conflicts with Mohegan Tribal Ordinances, or aspects of the sovereign immunity of The Mohegan Tribe or its agencies. No such factor is presented by this case.[20]
The Gaming Disputes Trial Court therefore was required to determine whether the “specific defect”, i.e., the black ice at the location of the accident, had existed for a period of time sufficient for the same to have been discovered by the Defendant in the exercise of due care. This test is well known and has been summarized as follows by the Connecticut Supreme Court:
When, however, the plaintiff does not allege either that the defendant’s conduct created the unsafe condition or that the defendant had actual notice of the condition, we have stated that “[t]he controlling question [becomes] that of constructive notice: whether the condition had existed for such a length of time that the [defendant’s] employees should, in the exercise of due care, have discovered it in time to have remedied it.” Morris v. King Cole Stores, Inc., 132 Conn. 489, 492-93, 45 A.2d 710 (1946). “What constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of a case. The nature of the business and the location of the foreign substance would be factors in this determination....” Id., at 494, 45 A.2d 710. “To a considerable degree each case must be decided on its own circumstances.... ”
Kelly v. Stop and Shop, Inc., 281 Conn. 768, 795, 918 A.2d 249 (2007). That the “totality of the circumstances”, or as the Morris court described it, “the particular circumstances of the case”, are to be considered in determining the “reasonable length of time” has been well established. Morris v. King Cole Stores, Inc.. 132 Conn. 489, 494, 45 A.2d 710 (1946).
Our review of the Gaming Disputes Trial Court’s decision, 4 G.D.R. 56 (2010), does not permit a determination of whether or not this standard was satisfied. The Court’s opinion quite correctly states *101 the duty of the Defendant to its business invitees [21] and that there can be no liability for a defective condition unless the Defendant was chargeable with notice thereof, citing Cruz v. Drezek, 175 Conn. 230, 397 A.2d 1335 (1978), but then goes on to give two apparent bases for the imposition of liability: “whether the Defendant knew of the existence of black ice and for how long a period of time before the accident;” and “[rjather, the issue also is whether a defendant should have known in the exercise of reasonable care that all the elements essential to the creation of a dangerous condition existed and to what extent the defendant then acted to protect business invitees from potential harm.” 4 G.D.R. at 58.
Of particular concern is that the Trial Court’s opinion appears to treat such factors as the presence of elements essential to the creation of a dangerous condition as an independent basis of liability, rather than as part of the “particular circumstances” of each case that determine the reasonable length of time for discovery of the specific defect causing the injury, an essential factor in establishing constructive notice. Furthermore, portions of the Trial Court’s Conclusions of Law would appear to elevate the monitoring of weather forecasts [22] and the prevention of the formation of ice[23] to the status of legal duties.
Evidence produced at trial, if accepted by the Trial Court, could establish that the black ice formed between 10:17 p.m. and 11:00 p.m., possibly earlier, that the accident occurred at 11:27 p.m., that the method for inspection of garage ramps for black ice could be considered haphazard, and that the Defendant was aware of the possibility of problems with ice that evening.[24] As for the evidence of prior accidents, the Trial Court obviously interpreted Clang’s testimony as applying to black ice accidents, the Defendant did not object on grounds of lack of foundation, and the transcript is essentially useless in establishing what was meant. “In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose. ... These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time to act.... ” Doe v. Carreiro, 94 Conn.App. 626, 632, 894 A.2d 993 (2006). Given the Trial Court’s obviously superior position in evaluating Clang’s testimony[25] *102 we do not find the “manifest error” required to disturb the Trial Court’s finding.
It is important to distinguish the differing standards for the admission of evidence of prior accidents when used to establish the presence of a specific defect as opposed to evidence to be considered a factor in determining what was a reasonable time for purposes of constructive notice. When used for the former purpose, the standard of similarity of circumstances is required.[26] When used for the latter purpose of establishing constructive notice, an “attenuated similarity” standard has been adopted by the Connecticut Supreme Court:
Adopting an attenuated similarity standard when evidence of a prior accident is introduced solely for notice purposes is appropriate for several reasons. First, this type of evidence is analogous to our settled law regarding prior similar condition evidence. The prior accident evidence in the present case, like the evidence of prior icing conditions on Route 6, was offered to bear on the timing of the defendant’s obligation to respond to the defect. In other words, with evidence of a prior accident in the same area from the same general cause, the defendant was under a greater obligation to discover and respond to the defect.
Ormsby v. Frankel, 255 Conn. 670, 689, 768 A.2d 441 (2001)(Emphasis Added). In other words, “[i]n such a case, the prior accidents need only be such as [would] call [the] defendant’s attention to the dangerous situation that resulted in the litigated accident.” Ormsby v. Frankel, 255 Conn, at 689, 768 A.2d 441, citing C. McCormick, Evidence (4th Ed. 1992) § 200, p. 848. “The greater the likelihood of danger is, however, the greater is the amount of care required in making an inspection of premises to meet the standard of due care.” Long v. Savin Rock Amusement Co., Inc., 141 Conn. 150, 153, 104 A.2d 221 (1954).
In a proper case, the existence of weather forecasts and their severity[27] may be among the “particular circumstances of a case”[28] considered by the trier of fact in determining what was a reasonable man- *103 nei* and amount of time for the inspection and discovery of a defective condition. Upon remand for articulation, however, the Trial Court should not consider the alleged failure to monitor weather forecasts as the violation of a distinct legal duty, which would result in liability; weather forecasts may or may not play a factor in the particular circumstances of each case to be considered in determining whether a defendant is chargeable with constructive notice.[29] Similarly, we can find no authority for an affirmative obligation to prevent the formation of black ice, nor was there any evidence presented as to how this could be accomplished.
Ill
EVIDENTIARY OBJECTIONS TO PLAINTIFF’S LOST WAGES
Turning to the Defendant’s arguments pertaining to the Trial Court’s calculation of Plaintiffs lost wages, sparse evidence was submitted as to Plaintiffs earning capacity and physical disability. The Trial Court took the average of the Plaintiffs earnings for the four weeks preceding the accident, introduced without objection as Plaintiffs Exhibit 10, and found the Plaintiff was incapacitated from the date of the accident through December 1, 2008, the last of his three of visits to Dr. William McEvoy, a chiropractor, who on that date discharged the Plaintiff to a home care program. The Plaintiff testified that he went to see Dr. McEvoy at the suggestion of his doctor because the Plaintiff “was having like real spasms all the time so I couldn’t do what I actually do....” [30] Even in the absence of medical testimony as to the length of disability,[31] the Trial Court was entitled to rely on the testimony of the Plaintiff, and the conclusion that such disability ceased when the Plaintiff was referred to a home care program is certainly logical. A trial court’s findings of fact are subject to limited review, and an appellate court may “reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record.” Superior Court Rules of Practice § 60-5; M.R.A.P. § 1(b). “The fact finding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us.” Lupien v. Lupien, 192 Conn. 443, 445, 472 A.2d 18 (1984). The Trial Court’s finding of lost wages as a result of the injuries sustained in this accident is not clearly erroneous.
The case is remanded for articulation by the Gaming Disputes Trial Court of the basis of its decision, specifically as to whether the defect of black ice had existed for a sufficient length of time so as to *104 charge to the Defendant with constructive notice in accordance with this opinion.
In this opinion Judges WILSON and MANFREDI concurred.

.The original defendants also included General Motors Corporation and Tony March Buick Company; the action against General Motors was stayed by its bankruptcy filing, and the Gaming Disputes Trial Court entered judgment after trial in favor of Tony March Buick Company, from which no appeal was taken by the Plaintiff. In this opinion, therefore, we shall refer to the Mohegan Tribal Gaming Authority as the Defendant.

. The MTGA challenges the Trial Court's reliance on prior accidents as lacking in relevance (see discussion, infra ) and its award of lost wages based on the Plaintiffs testimony, which the Defendant alleges to be unsupported by sufficient evidence.

. Neither party to this appeal moved for an articulation.

. Trial Transcript at 136.

. Trial Transcript at 137. "Mohegan grounds" came out "and took care of the business for us.” Id.

. Trial Transcript at 137-38.

. Trial Transcript at 140.

. Trial Transcript at 146-47.

. Trial Transcript at 148-157.

. See Conclusions of Law, Paragraph 4, 4 G.D.R. 56.

.Trial Transcript at 170-71. The course of inquiry was as follows:
THE COURT: And the area that the accident happened with is a ramp, is that right, is that what you call it?
THE WITNESS: Yeah.
THE COURT: A curve?
THE WITNESS: Correct.
THE COURT: Uphill.
THE WITNESS: Correct.
THE COURT: An area that's subjective [sic] to slippery conditions if things ice over?
THE WITNESS: Yeah.
THE COURT: Something everybody is aware of, the grounds crew?
THE WITNESS: Yeah, but it's no different than any other road.
THE COURT: Well, uphill and a curve are a little bit more difficult than a straightaway, isn’t it?
THE WITNESS: True.
THE COURT: It isn't level.
THE WITNESS: No, it's definitely not level.

. Transcript at 114. Lessor described that conditions for Groton were reported as being 30 degrees before 10:00 p.m., “[s]o it is possible that I may be too late, the icing may have even been earlier ... [b]ut I think I'm much more confident to say somewhere between the 10:17 and 11 [than] to try to go prior to that. Id. at 114-15.

. Trial Transcript at 114.

. “Negligence means conduct that falls below the standard established by law or custom for the protection of others against unreasonable risk of injury or harm. The standard of conduct to which a person must conform to avoid being negligent is that of a reasonable person under similar circumstances. Where applicable, the rule of actual or constructive notice shall be applied to determine negligence; negligence shall not be deemed to arise from the mode of operation.” MTC § 3-245.

. But see Drysdale v. Mohegan Tribal Gaming Authority, 2 G.D.R. 17, 4 Am. Tribal Law 562 (2003) (Gaming Disputes Trial Court declined to extend the Connecticut Supreme Court’s imposition of liability for negligence in the service of alcohol set forth in Craig v. Driscoll, 262 Conn. 312, 813 A.2d 1003 (2003), so as to allow a cause of action by the intoxicated person rather than an injured third person; Craig itself was subsequently overruled legislatively by amendments to Conn. Gen.Stat. § 30-102).

. Also described by Judge Corradino as one that occasions “conceptual difficulty" for the court. Vidro, Id.

. For a seemingly extreme application of the "specific defect” rule, see Krause v. Almor Homes, Inc., 149 Conn. 614, 183 A.2d 273 (1962).

. "A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act.” Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375, 441 A.2d 620 (1982). For instance, if there is knowledge of conditions certain to produce a specific defect, logic would seem to dictate *100 that the traditional justification for the rule (that the possessor of land is not an insurer) would be satisfied by eliminating the requirement of a reasonable time for discovery, and instead focusing solely on the reasonable time to remedy the defect. The evidence presented in this case, however, falls far short of establishing weather conditions that were certain to produce black ice.

. The common law of the State of Connecticut is incorporated into the law of the Mohegan Tribe by virtue of MTC § 3—52(a)(3); the issue discussed in Drysdale v. Mohegan Tribal Gaming Authority, 2 G.D.R. 17, 18 fn. 5, 4 Am. Tribal Law. 562 (2003) has never been raised, and the common law of the State of Connecticut incorporated into the law of the Mohegan Tribe has never been held to include only decisions interpreting the Connecticut General Statutes.

. It is interesting to note that the Connecticut Appellate Court recently, in declining to abandon the “specific defect” rule on grounds that such argument was initially presented in a reply brief (in itself a more than sufficient reason), then went on, almost editorially, to assert that as an intermediate appellate court, it was not at liberty to challenge the Connecticut Supreme Court’s reaffirmation of the "specific defect” rule in Riccio v. Harbour Village Condominium Association, Inc., 281 Conn. 160, 163, 914 A.2d 529 (2007). There was no hint of justification for or defense of the rule, based on public policy, logic, or anv other basis. James v. The Valley-Shore Y.M.C.A., Inc., 125 Conn.App. 174, 184, 6 A.3d 1199 (2010).

. 4 G.D.R. at 58, Conclusions of Law Paragraph 1.

. 4 G.D.R. at 58, Conclusion of Law Paragraph 2.

. 4 G.D.R. at 58, Conclusion of Law Paragraph 3.

. Clang, Grounds Supervisor for the Mohegan Sun Casino, testified that he was called at his home and asked to come in to help under the following circumstances:
THE COURT: And was there a reason that you were called in at that time?
THE WITNESS: The shift manager called me at home and told me to come in and help.
THE COURT: Told you what?
THE WITNESS: To come in and help.
THE COURT: Why? Why did he need help?
THE WITNESS: Because it was a Friday night, I believe, and it was—we were understaffed that night and he thought there were—could be ice calls out there.
[[Image here]]
THE COURT: When you got there, did you do any sanding?
THE WITNESS: Oh yeah. I jumped in my truck and went out and about and hit all the roads and shortly after 11:00 o’clock.
The foregoing, if accepted by the Trial Court, is corroborative of the testimony of the Plaintiffs expert as to when the ice had formed.

. We have no basis for concluding that the response marked "unintelligible” in the transcript was not accurately heard by the Trial Court:

.In the instant case, the weakness of such foundation, even if the witness was testifying about prior black ice accidents to establish the existence of a defect, is clear. As the Connecticut Appellate Court has stated in DiDomizio v. Frankel:
"A party attempting to offer evidence of prior accidents or evidence of the experience of others has the burden of proving that the circumstances were substantially the same as those under which the plaintiff was injured, and that the use by others was substantially similar to that of the plaintiff.... Moreover, [e]vidence of prior occurrences will be admitted only if the proffering party first lays a sufficient foundation of substantial similarity of conditions between the immediate and the prior happenings. Marois v. Paper Converting Machine Co., 539 A.2d 621, 625 (Me.1988). The question whether the essential preliminaries have been established is for the court, and the court’s decision will not be disturbed unless there is clear and manifest error.”
(Citations omitted; internal quotation marks omitted.) Hall v. Burns, supra, 213 Conn, at 451-52, 569 A.2d 10. DiDomizio v. Frankel, 44 Conn.App. 597, 691 A.2d 594, 598 (1997).

. 4 G.D.R. at 58, Conclusions of Law Paragraph 2. There are, of course, situations where failure to monitor weather forecasts is a violation of a specially imposed duty; see Japan Airlines Co., Ltd. v. Port Authority of New York and New Jersey, 178 F.3d 103 (C.A.2 1999); See also The Imoan, 67 F.2d 603, 604 (C.A.2 1933), where Judge Learned Hand declined to impose liability for failure to call the Weather Bureau for unpublished news when the weather at the time a steamtug left harbor was good, though had the boat's master called the New York Weather Bureau, “he would have got advices which should have kept a careful navigator in port.” Id.

. Morris v. King Cole Stores, Inc., 132 Conn. at 494, 45 A.2d 710.

. Although somewhat confusing, the testimony of Lessor as to anticipated large amounts of precipitation appears to refer to the next day (1:00 a.m.) on March 2nd, Trial Transcript at 111. In any event, it is not at all clear that there was such a failure; see fn 26, infra. The anticipation of “ice calls" is just one of the particular circumstances of this case to be considered in the determination of the time period for constructive notice.

. Trial Transcript at 33.

.Medical records introduced by the Plaintiff establish complaints of considerable pain on his part at least through the end of April, 2008. Plaintiff's Exhibit 7. There was no evidence introduced of treatment thereafter until the first visit to Dr. McEvoy on November 24, 2008, although the office notes for that visit indicated that he was referred by his primary care doctor. No records from a primary care physician were introduced into evidence.