ARTICULATION OF DECISION ON MOTION FOR SUMMARY JUDGMENT OF THE DEFENDANT “TUCKER MECHANICAL’’
WILSON, Judge.
I.
In a Memorandum of Decision of April 12, 2007, this court denied a Motion for Summary Judgment filed by three of the original Defendants in this action (collectively the Defendants “Tucker Mechanical”). Those Defendants asserted that the Plaintiffs action was barred by the “applicable” statute of limitations. The issue before the court was: which was, or were, the statute, or statutes of limitations applicable to this action. The Plaintiffs had asserted in their complaint that “Pursuant to Section 3 of the Mohegan Torts Code, *400 Ordinance 2001-07, the Mohegan Tribal Gaming Authority (sic; presumably the Plaintiffs meant this court) has jurisdiction over this action.” The Mohegan Torts Code is now codified as MTC §S 3—241 et. seq., as amended by MTO 2005-02. When the action was brought, § 3-246 of the Torts Code promulgated a 270-day period of limitations for bringing this action.[1]
The Plaintiffs’ action against these moving Defendants, “Tucker Mechanical” was brought within the 270-day period. The moving Defendants did not dispute that fact, but claimed that the Connecticut Statute of Repose, contained as an exception to a Connecticut statute of limitations, C.G.S. § 52-584, should be superimposed onto the Mohegan Torts Code and so construed as to bar the Plaintiffs’ action. The court held that the Connecticut Statute of Repose was in conflict with Mohegan Tribal Law and therefore was not applicable. Accordingly, the Defendants “Tucker Mechanical” were not entitled to summary judgment as a matter of law, and their motion was denied.
The Defendants’ answer to the Plaintiffs’ jurisdictional allegation regarding the applicability of the Mohegan Torts Code did not respond to this statement of a legal conclusion, but their Motion for Summary Judgment, briefs, and oral argument assumed, with the Plaintiffs, the applicability of the Torts Code.
This court noted in FN 1 of the decision that “[bjecause this court has jurisdiction under the Constitution [of The Mohegan Tribe of Indians of Connecticut, Art. XIII §§ 1 and 2] and under MTC §§ 3-21 et seq. this court will also assume the applicability of the Torts Code for purposes of this Defendant’s motion.”
After the Defendants “Tucker Mechanical” appealed to the Gaming Disputes Court of Appeals, the appeals court remanded this matter to this court for further articulation of the basis of the Tribal Court’s decision as to the following issue:
“Whether the Mohegan Torts Code has any applicability to tort claims brought against non-Tribal entities.’ ”
This articulation sets forth the court’s holding that the Mohegan Torts Code is applicable to tort claims brought against non-tribal entities.
II.
The term “Mohegan Tribal Entity” as defined in the Torts Code § 3-245 “means any entity established pursuant to the Mohegan Constitution or duly-enacted Mohegan Tribal Ordinances, including but not limited to the Mohegan Tribal Gaming Authority, without geographical limitation.” It appears from the pleadings and record in this case that none of the Defendants is a “Mohegan Tribal Entity.” The “Purpose” Section of the Torts Code, § 3-244 (to be discussed more fully hereafter) is expressly applicable to Mohegan Entities, and the question to be decided in this articulation is whether it also applies to non-tribal entities. Although the motion of the Defendant Tucker does not expressly call into question the court’s subject matter jurisdiction, the question now raised does implicate the subject matter jurisdiction of the court, so that question will be considered first.
III.
A.

Jurisdictional Facts

In paragraph one of the complaint, Plaintiff alleged “Pursuant to Section 3 of *401 the Mohegan Torts Code, Ordinance 2001-07 [MTC Sec. 3-243] the Mohegan Tribal Gaming Authority (sic. Presumably, meaning this court) has jurisdiction over this action.”
The Defendant Tucker’s answer to this paragraph did not respond to this statement of a legal conclusion.
The complaint proceeds to allege that the Plaintiff, a resident of Gales Ferry, Connecticut, “was an employee of the Mohegan Sun and/or Sun International in Un-casville, Connecticut.” There is no allegation, or any evidence in the record, that the Plaintiff is a member of the Mohegan Tribe. This court takes judicial notice that the “Mohegan Sun and/or Sun International” is a Mohegan Tribal entity within the meaning of Sec. 3-245 of the Torts Code.
On or about June 15, 2004, while in the course of his employment, the Plaintiff sustained grievous personal injuries alleged to have been caused by the negligence of the Defendants, eight of whom are named in the original action.
The negligence which the Plaintiff alleges, and which the Defendants deny, arise out of the development and construction of the “Race Book” section of the Mohegan Sun Casino, a gaming facility owned and controlled by the Mohegan Tribe and the Mohegan Tribal Gaming Authority on the Mohegan Tribal Reservation.
The Plaintiffs “Statement of Amount in Demand” claims “damages to the maximum allowed pursuant to the Mohegan Torts Code or other applicable Tort Law.”
As the Plaintiffs employer, the Mohegan Sun and Casino intervened as an Intervening Plaintiff on or about June 9, 2005. The court will take judicial notice that the Intervening Plaintiff is a Mohegan Tribal Entity, as above defined.
It therefore appears from the record that the particular subject matter of the complaint is a tort claim, claiming damages for personal injuries allegedly caused by the negligence of the Defendants; that the particular types of Plaintiffs are a non-tribal member, an employee of a tribal entity, and his wife, and an intervening Plaintiff, a tribal entity; and that the claim is brought against a number of business organizations, none of which is a tribal entity. The court wall thus consider whether it has subject matter jurisdiction to hear this particular kind of case under, first, the Constitution of The Mohegan Tribe of Indians of Connecticut and the Ordinance establishing this court, M.T.O. 95-4, July 20, 1995, codified as MTC § 3-21 et. seq.
B.

Jurisdiction: General Principles

“Tribal authority over the activities of non-Indians on reservation land is an important part of tribal sovereignty ... Civil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute.” See, Iowa Mutual Insurance Co., v. LaPlante, 480 U.S. 9, 18, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) (citations omitted.)
A “tribes’ inherent civil adjudicative authority over on-reservation conduct of non-Indians should be presumed in the absence of countermanding statutory or treaty language.” Cohen, Federal Indian Law 232, N. 226 (2005 Ed.) (Citing Iowa Mutual Insurance Co., v. LaPlante, supra.) “Cohen”, the leading treatise on Federal Indian Law, goes on to state that: “Subject matter jurisdiction is the ability of a court to hear a particular kind of case, either because it involves a particular subject matter, or because it is brought by a particular type of Plaintiff or against a *402 particular type of Defendant.” Cohen, op, cit. at 597, 599.
The “particular kind of case” here is a Tort claim; the “particular subject matter” is a claim seeking damages for personal injuries allegedly caused by the negligence of the Defendants; the “particular types of Plaintiffs” are a non-tribal member—employee of the Mohegan Sun and/or Sun International; his wife; and the Plaintiff s employer, a Mohegan Tribal entity; the “particular type of Defendants” are business organizations, not tribal entities, who performed work for or on behalf of the Mohegan Tribe (or one of its entities) on The Mohegan Tribal reservation. This particular kind of case and subject, and the particular kinds of Plaintiffs and Defendants who are parties to this case, are encompassed within the Constitution of The Mohegan Tribe and the ordinances enacted in pursuance thereof. The court is not aware of any countermanding specific treaty provisions or federal statute. Therefore, although the court no longer assumes the applicability of the Torts Code it does presume that it has jurisdiction over the subject matter of this case.
C.

The Mohegan Constitution

The Constitution of The Mohegan Tribe mandated the establishment, by ordinance, of this court and provided that “[ejxelusive jurisdiction for the Tribe over disputes arising out of or in connection with the Gaming, the actions of the Tribal Gaming Authority, or contracts entered into by The Mohegan Tribe or the Tribal Gaming Authority in connection with Gaming ... shall be vested in the Gaming Disputes Court.” Under this disjunctive phrasing, there are three prongs to this court’s jurisdiction:
1.Disputes arising out of or in connection with the Gaming;
2. The actions of the Tribal Gaming Authority; or
3. Contracts ...
Constitution, Article XIII Sec. 2. “Gaming” is defined in Section 1 of the Constitution: “... the development, construction, operation, promotion, financing, regulation and licensing of gaming, and any associated hotel, associated resort or associated entertainment facilities, on tribal lands” (collectively, “Gaming”)....
“Disputes” is not defined in the Tribal laws, but Black’s Law Dictionary’s definition is to the point: “a conflict or controversy; a conflict of claims or rights; an assertion of a right, claim, or demand on one side, met by contrary claims or allegations on the other ... the subject of litigation; the matter for which a suit is brought, and upon which issue is joined ...” (citations omitted). This suit falls squarely within the first prong of the court’s jurisdiction: viz. it is a claim for damages for personal injuries alleged to have been caused by the negligence of one or more of the Defendants in the development and construction of gaming facilities on the Tribal reservation, which allegations have been denied by the Defendants, and issue has been joined. There is no provision which limits such jurisdiction to tribal entities, either as to Plaintiff or Defendant. Presumptively, therefore, the court has jurisdiction.

D.

Jurisdiction Under the Gaming Disputes Court Ordinance

This presumption is confirmed by the provisions of MTC § 3-21 et. seq., (MTO 95-4, July 20, 1995), the ordinance creating the Gaming Disputes Court. Several provisions are relevant. Sec. 3-21 provides that this court is a court of limit *403 ed jurisdiction. “Its subject matter is strictly limited as set forth in this article. The Gaming Disputes Court is not a court of general jurisdiction.”
Sec. 3-41 defines the territorial jurisdiction of the court to “include all lands encompassed by the reservation ...” and certain extraterritorial jurisdictions not here relevant.
Sec. 3-51 declares the substantive law of The Mohegan Tribe, portions of which will be hereafter considered.
Sec. 3-71 contains an expansive definition of personal jurisdiction and Sec. 3-91 a more succinct definition of subject matter jurisdiction:
“Sec. 3-71. Personal Jurisdiction.”
(a) Personal jurisdiction of the Gaming Disputes Court shall be as follows:
(1) As used in these jurisdictional provisions, the word “person” shall be as defined in the General Statutes of Connecticut.
(2) Subject to any contrary provisions, exceptions or limitations contained in Mohegan Tribal or federal law, the courts established by this Article shall have civil jurisdiction over the following persons:
i. Any person residing, located, or present within The Mohegan Reservation; or
ii. Any person who transacts, conducts, or performs any business or activity within or affecting The Mohegan Reservation, either in person or by an agent or representative for any civil cause of action arising out of that transaction, conduct, business, or activity; or
iii. Any person who owns, uses or possesses any property, including any lease, or sublease, within The Mohegan Reservation; or
iv. Any person who engages in negligent or tortious conduct within The Mohegan Reservation either in person or by an agent or representative; or
v. Any person who initiates or files with the Trial Court any civil cause of action, whether in person or through an attorney, for any counterclaim, cross-claim, or any other affirmative pleading for relief which may be asserted within that same action; or
vi. Any person entering upon the Reservation for the purpose of participating in lawful gaming activities, which entry and participation is deemed to be consent to the exercise of jurisdiction by The Tribe over such persons in any civil action to enforce obligations arising from any transaction which arises within the Reservation.
(3)The foregoing bases of jurisdiction are not exclusive.”
“Sec. 3-91. Jurisdiction Defined.”
“The Gaming Disputes Court shall have exclusive original jurisdiction over all cases with respect to which The Tribe has conferred subject matter jurisdiction pursuant to Article XIII of The Mohegan Constitution.”
Notwithstanding that this court is a court of limited jurisdiction and possesses only such jurisdiction as is set forth in Article XIII, Sec. 2 of the Constitution, “the constitutional jurisdiction of this court is broadly defined in connection with the preceding [i.e., Art. XIII, Sec. 1] definition of Gaming ...” Ager v. Office of the Director of Regulation, 1 G.D.R. 1 (1997). Nothing therein limits the jurisdiction to tribal entities; to the contrary, jurisdiction is expansively defined to include non-tribal entities.
Under these provisions of the Tribal Constitution and the cited provisions of the MTC §§ 3-21 et. seq., 3-41, 3-51 et. seq., *404 3-71 and 3-91, this court presumptively has civil jurisdiction over the activities of the Defendants on the Mohegan Reservation. Iowa Mut. Ins. Co., v. LaPlante, 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10, (1987).

IV.

Applicability of the Mohegan Torts Code

The jurisdiction of this court having been demonstrated, it remains to be determined what substantive law is to be applied to the facts of this case. The substantive law is described in MTC §§ 3— 51—3-54 as follows:
“Sec. 3-51. Substantive Law.
The judges of the Gaming Disputes Trial Court and the Gaming Disputes Court of Appeals shall apply and enforce the substantive law of The Mohegan Tribe in all cases, except when Tribal law is preempted by applicable federal law. (Ord. No. 95-4, § 300, 7-20-1995)
Sec. 3-52. Sources of Tribal Law.
(a) The substantive law of The Mohegan Tribe for application by the Gaming Disputes Court shall be:
(1) The law as set forth in any Mohegan Tribal ordinances or regulations.
(2) The General Statutes of Connecticut, as may be amended from time to time, are hereby adopted as and declared to be the positive law of The Mohegan Tribe for application by the Gaming Disputes Court, except as such statutes are in conflict with Mohegan Tribal Law.
(3) The common law of the State of Connecticut interpreting the positive law adopted in Subsection (2) above, which body of law is hereby adopted as and declared to be the common law of The Mohegan Tribe for application by the Gaming Disputes Court, except as such common law is in conflict with Mohegan Tribal Law. (Ord. No. 95-4, § 301, 7-20-1995)
Sec. 3-53. Traditional Tribal Law.
Unwritten Mohegan Tribe traditional law and customs shall not be applicable to any civil action or appeal in the Gaming Disputes Court, and no evidence offered to prove nor argument predicated upon any such traditional law or custom shall be admissible or accepted in the Gaming Disputes Court.
(Ord. No. 95-4, § 302, 7-20-1995)
Sec. 3-54. Authority to Further Develop Mohegan Tribe Common Law. The Gaming Disputes Trial Court and Gaming Disputes Court of Appeals shall have the authority to further develop through their decisions The Mohegan Tribe common law for the Gaming Disputes Court on any question of law.”
In further developing The Tribe’s common law and in deciding the cases before it, “the Gaming Disputes Court shall strive to achieve stability, clarity, equity, commercial reasonableness, and fidelity to any applicable Mohegan Tribal ordinances or regulations. (Ord. No. 95-4, § 303, 7-20-1995)”
Primary, therefore, are the Mohegan Tribal Ordinances and the most obvious of those is the Torts Code, MTC § 3-241 et. seq. The question as to the applicability of this code arises from the “Purpose” section of the Code, § 3-244:
Sec. 3-244. Purpose.
The Mohegan Tribe of Indians of Connecticut, a federally-recognized sovereign Indian tribal nation occupying the Mohegan Reservation on land held in trust by the United States in Uncasville, Connecticut, intends this Code to govern the adjudication of torts from actions of The Mohegan Tribe of Indians of Connecticut and from actions of the Mohe *405 gan Tribal Gaming Authority, and their subordinate entities and their respective authorized officials, agents, employees and representatives while engaged within the scope of their authority or employment on behalf of such entities, wherever located.
It at once appears that there is nothing in this purpose clause that applies to “the adjudication of torts from actions of” non-tribal entities; nor, however, is there anything to exclude such application. Other provisions of the Torts Code, as well as general principles of “stability, clarity, equity, commercial reasonableness, and fidelity to any applicable Mohegan Tribal Ordinance or regulations,” (§ 3-54) compel the application of the Torts Code to non-tribal, as well as Tribal, entities. The “definitions” section, § 3-245, is, on its face, applicable equally to non-tribal as well as Tribal entities, especially the definition of “person”: “any individual, firm, partnership, corporation or association.”
Sec. 3-246, is likewise neutral as to the particular kind of Defendant to which it applies. The next three sections, §§ 3-248, 3-249, and 3-250 make clear the applicability of the Torts Code to non-tribal entities.
Sec. 3-248 “Procedure” reads as follows:
“Sec. 3-248. Procedure.
(a) Any person who, wherever located, sustains an injury as defined in this Code that arises from or out of the Gaming Facilities or that is allegedly caused directly or indirectly by acts or omissions of the MTGA (or its authorized representatives), and who seeks recovery from the MTGA for such alleged injury, may file a complaint with the Gaming Disputes Trial Court, together with the required filing fee, pursuant to the Rules of Procedure of the Gaming Disputes Court. (Emphasis added)
'(b) Any person who, wherever located, sustains an injury as defined in this Code and who seeks to recover for said injury from any Mohegan Tribal Entity (or its authorized representatives) allegedly caused directly or indirectly by acts or omissions of a Mohegan Tribal Entity other than the MTGA (or its authorized representatives), may file a Complaint with the Mohegan Tribal Court, together with the required filing fee, pursuant to the Rules of Procedure of the Mohegan Tribal Court.
(c) Every complaint filed under this Code shall contain the following:
(1) The name and address of the claimant and the name and address of the claimant’s attorney, if any;
(2) A concise statement, in consecutively numbered paragraphs, of the facts giving rise to the complaint;
(3) The date(s), time(s), and locations) of the alleged injury, if known;
(4) The name of any individual(s) alleged to have caused the alleged injury, and their relationship, if known, to a Mohegan Tribal Entity;
(5) The name of the Mohegan Tribal Entity that is considered liable to the Claimant for the alleged injury;
(6) A concise statement of the nature and extent of any alleged injury sustained by the Claimant; and
(7) If the Complaint is brought by a personal representative of a person under a disability (as defined in this Code), the name of such personal representative and a copy of any officially-dated document probative of the appointment of such personal representative.
(d) No person or entity shall have a right pursuant to this Code to the trial of any matter before a jury.
*406 ■(e) A final judgment of a Mohegan Trial Court in any action brought under this Code may be appealed pursuant to the applicable Rules of the Mohegan Court in which final judgment [⅛] entered.”
The emphasized words “that arises from, or out of the Gaming Facilities or ... “ appear only in subsection (a), treating of the procedure in this court, and not in (b) dealing with the Tribal Court. Subsection (a) therefore, deals with two separate, distinct, categories of disputes that may be filed in this court, i.e., an injury 1. “That arises from or out of the Gaming Facilities or” 2. “That is allegedly caused directly or indirectly by acts or omissions of the Mohegan Tribal Gaming Authority (or its authorized representatives), and who seeks recovery from the Mohegan Tribal Gaming Authority for such alleged injury.... ”
Subsection (b) deals with disputes with “a Mohegan Tribal Entity other than the MTGA....” Such suits are to be filed in the Tribal Court. All Mohegan Entities are therefore encompassed by the second part of (a), and all of (b). The dispute “that arises from or out of the Gaming Facilities” therefore can only mean those involving non-tribal entities. (The term “Gaming facilities” is defined in § 3-245 and is essentially the same as “Gaming” in the Constitution quoted in part II C., supra. )
This reading of § 3-248 is confirmed by the Venue and Jurisdiction provisions of § 3-249:
Sec. 3-249. Venue and Jurisdiction.
“(a) Venue for tort claims a,rising in connection with the gaming facilities as defined in Section 3-245 of this Code, and/or against authorized representatives of the MTGA acting within the scope of their employment, shall be found exclusively in the Mohegan Gaming Disputes Court.
(b) Venue for tort claims arising in connection with any Mohegan Tribal Entity other than the Gaming Facilities shall be found exclusively in the Mohegan Tribal Court.” (Emphasis added.)
Section (a) here corresponds exactly with § 3-248(a) and provides for venue in this court for the two discrete categories of claims: those “arising in connection with gaming facilities” (non-tribal entities), “and/or against” any tribal entities.
The intent of the Tribe to apply the Torts Code to non-tribal as well as Tribal entities is confirmed in § 3-249(e):
“(e) In order to effectuate the intent of The Mohegan Tribe and the MTGA, the Mohegan Tribal Courts shall ham personal jurisdiction over all persons and entities wherever located to the fullest extent permitted by applicable law.” (Emphasis added).
It is conclusively demonstrated in § 3-250(d):
“(d) The limitations upon recovery against the sovereign tribal entities and representatives as set forth herein shall not apply to limit recovery against a defendant that is not a Mohegan Tribal Entity or it is authorized, representative.” (Emphasis added.)
There would be no need for stating such exception to the limitation on recovery if non-tribal entities were not potential defendants under the Torts Code.
This reading is also consonant with the mandate of MTC § 3-54 that “in deciding cases before it, the Gaming Disputes Court shall strive to achieve stability, clarity, equity, commercial reasonableness, and fidelity to any applicable Mohegan Tribal Ordinances or regulations.” Application of the Torts Code to non-tribal as well as tribal entities, insofar as possible, furthers those purposes.
*407 v.
Finally, the court will consider the implications of a contrary decision, i.e., a decision that the Torts Code is not applicable to non-tribal entities. This court has general subject matter jurisdiction to adjudicate civil disputes involving non-tribal entities, certainly and at least to the extent that they arise out of “gaming” on the reservation, as heretofore defined. If the Torts Code were not applicable, what law would apply? There is no other Mohegan law applicable to tort claims per se. Under MTC § 3-52, Sources of Tribal Law, this court would apply the General Statutes of Connecticut and “[t]he common law of the State of Connecticut interpreting the positive law adopted in subsection (2) above ...” [Sec. 3-52(a)(2)].
Whether this encompasses the entire body of Connecticut common law, is an open question. See Drysdale v. MTGA, 2 G.D.R. 17, 18, N.5 (2003); LaPlante v. MTGA, 3 G.D.R. 17, 22, N.3 (2006). If it is not the entire body of Connecticut common law (which would seem to encompass a major portion of the Connecticut Tort law) this court has the authority to further develop Mohegan Tribe common law pursuant to § 3-54. Does this mean that the court could develop Mohegan common law as to non-tribal entities, on a different footing from that of the Torts Code? And, if the entire body of Connecticut common law (as well as the Connecticut General Statutes) is applicable to non-tribal entities, there is a significant potential for treatment of non-tribal entities on a footing different from that of Tribal Entities[2]. This seems contrary to the mandate to this court contained in § 3-54 to “strive to achieve stability, clarity, equity, commercial reasonableness and fidelity to any Mohegan Tribal ordinances or regulations.” This mandate is not a reason for deciding that the Torts Code applies to non-Tribal entities—that reason comes from a reading of the code itself—but it does buttress the decision. For those reasons the court holds that the Mohegan Torts Code is applicable to Tort claims brought against non-Tribal entities.

. MTO 2005-02 extended this period to one year. That amendment has no bearing on this proceeding.

. An example of a possible disparity conies from the rejection by the Tribal Council of the "Mode of Operation” theory of negligence in the amendment to the Torts Code made by Resolution No.2007-17 (April 18, 2007), thereby rejecting the common law of Connecticut set forth in Kelly v. Stop and Shop, S.C. 17404, 281 Conn. 768, 918 A.2d 249 (2007). If this analysis is correct, this would require this court to apply (or at least to consider) the "Mode of Operation” theory in negligence claims against non-tribal entities, but forbid its application in identical claims against tribal entities.