[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff was 68 years of age at the time of her fall on the premises of the defendant, Stop Shop, in Ansonia, Connecticut. The plaintiff was a business invitee. The plaintiff on August 29, 1990 at about 10:50 A.M. entered the store intending to purchase fish. She was carrying an umbrella and a pocketbook. She was wearing low heeled rubber sole shoes. Entrance and exit to the store is controlled by electrical devices and need not be manually operated. On this date it was raining hard. The store places mats to absorb the wetness created by patrons entering the store. The plaintiff was familiar with the location of the fish department, which was left of the entranceway. The plaintiff saw the wetness of the area, and accordingly was aware of the risk. The plaintiff testified that as she entered the store she was specifically looking for fish. She remembered two mats side by side. She turned left and as she went off the mats she fell. She testified it was a wet surface and her feet went from under her and she fell on her left side. She testified she didn't see any warning signs or cones around the area and does not remember whether the floor was wet or dry. Under cross-examination the plaintiff asserted that she fell on the floor when she was off the mat. She did not know how far off the mat and that she saw no wetness on the floor or her clothes. She further testified she didn't move or was she moved after the fall.
The defendant showed a video tape which was introduced in evidence (Defendant's Exhibit 2) which contradicts the plaintiff's testimony of the place that she fell. The video has her lying on the exit mat with her body legs and feet on the mat. No part of the plaintiff's body is on the floor. From the physical facts of this case it can only be concluded that the plaintiff was uncertain where she fell. CT Page 1302
At trial the defendant called as a witness Jodie Bryan, head of security and in charge of safety procedures at the store. Ms. Bryan testified she was in her office when informed of the fall and she turned on a camera which is kept in her office which is manually operated to the area of the entrance of the store and filmed the video (Defendant's Exhibit 2). Ms. Bryan took control of the area of the fall by redirecting the traffic flow into the store and away from the plaintiff who stayed in her disabled position until the E.M.S. arrived. The plaintiff was placed on a body board and taken to the hospital.
Ms. Bryan further testified that a man Lloyd George, who was not called as a witness regularly mopped up the area. Ms. Bryan directed Lloyd George to redirect traffic so as not to bump into the plaintiff. Ms. Bryan testified that the plaintiff when asked by her how she fell that the plaintiff stated "she was wiping her feet and her feet went out from under her." (See Defendant's Exhibit 3). None of the parties that signed the Incident Report (Exhibit 3) were produced at trial. No witnesses of the defendant saw the accident.
Ms. Bryan testified a man cleans up mats regularly. It is presumed Lloyd George was such person yet he did not testify as to when he last cleaned the mats or how frequently. In the Incident Report Lloyd George stated he was "working the front end" but did not see the accident.
The mats were placed at the entrance doors at 7:00 A.M. on this date when the store opened. The mats were at the time of the accident wet from traffic. The defendant store manager testified the mats were wet. Five to six thousand patrons entered the store this date. The accident of the plaintiff was the only one reported this date.
The defendant in this case claims that the accident and injuries were caused by the plaintiff's own negligence.
The issues to be decided in this case is liability of the defendant and the percentage of negligence by the plaintiff.
As briefed by the plaintiff, the defendant owed the plaintiff the duty to keep the premises in a reasonably safe condition for the anticipated use by the plaintiff. The plaintiff cites Cruz v. Drezek, 175 Conn. 230. In that case the plaintiff suffered a fall as a result of a fall on a defective porch. In this case the CT Page 1303 defective condition of the wetness of the mats and the floor surrounding the mats was known to the plaintiff.
The credible testimony is that the mats at the time of the fall were wet. No cones were present to direct the flow of traffic over said mats. Mr. Champagne, the store manager, corroborated the rugs were wet. In this case the defendant had actual notice of the condition of the mats. The defendants claimed that they used reasonable means to keep the premises reasonably safe for the intended use by its customers. The method of keeping the mats reasonably safe was to have a porter mop up the wetness as it accumulated. The court never heard from the mopper but only from the person who is in charge of the safety of the store. The plaintiff persuasively argues that the defendant knew of the wetness of the area. That the mats were placed more than 4 hours before the fall. Heavy rains and traffic caused a wetness that had to be mopped. The plaintiff asserts that the mats should have been changed to keep the area reasonably safe for the conditions and traffic that day. From all the evidence adduced at trial this court concludes that knowing the condition of the mats the defendant did not take reasonable precautions to keep the area reasonably safe for the anticipated use.
The court having considered the Special Defense, concludes that the plaintiff was confused after such a painful fall to determine with any particularity the specific location of her fall. The court however, has considered her statement to Ms. Bryan of how the plaintiff fell; her knowledge of the wetness of the mats, and therefore should have walked with greater care. The court finds that the plaintiff was 45% contributorily negligent and reduces the award by that amount.
The injuries suffered by the plaintiff were serious, painful and of a permanent nature. She was treated by Dr. Androphy at Griffin Hospital for a period of two weeks. She was in a wheelchair for two months. She suffered a left elbow fracture and could not lift her left leg due to her hip fracture. She now claims a shortness of her left leg. She required an extension (pipe contraption) to keep her left arm extended. She still complains of sensitivity in her hip area, where a hip implant was made. She is now 72 years old with a life expectancy of 13 years. She was a part time employee of a doctor and was out of work from August 27, to November 28, 1990. She returned to work. She has a wage loss of $1512.00. Dr. Androphy's opinion assesses a 25% impairment to the plaintiff's left lower extremity. CT Page 1304
The medical bills incurred from her injuries amounted to $21,693.95.
Although she sustained severe and painful injuries she appeared to be relatively well at trial.
Accordingly, as to the First Count, the Court awards the plaintiff Economic damages in the amount of $23,205.95. Non Economic damages in the amount of $100,000. The total award is reduced by 45% attributed to the plaintiff's own negligence. Judgment may enter in favor of the plaintiff for $67,763.25.
As to the Second Count, the Court finds in favor of the defendant. The plaintiff having failed to brief said count it is deemed to be abandoned. Judgment in favor of the defendant in the Second Count.
Frank S. Meadow State Trial Referee