******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ISHA SEN *v.* KOSTAS TSIONGAS
(AC 40963)

Prescott, Elgo and Pellegrino, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant, who was the landlord and owner of the apartment building in which she lived, for negligence in connection with personal injuries the plaintiff sustained when she was bitten in the building's common stairway by a dog owned by one of the other tenants. Specifically, the plaintiff alleged, inter alia, that the defendant was negligent in failing to maintain the building premises in a reasonably safe condition by allowing the dog's owner to keep a vicious animal and failing to investigate the animal's history of viciousness. The defendant moved for summary judgment on the ground that he did not have any knowledge of the alleged vicious propensities of the dog. The trial court granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Held* that the trial court improperly rendered summary judgment in favor of the defendant, as there was a disputed issue of material fact as to whether the defendant should have known that the dog had vicious propensities: on the basis of the plaintiff's averments that the dog acted viciously toward her when she approached the building and displayed vicious tendencies that were visible to all those who observed it, a jury could reasonably infer that the defendant, who came to the building on a weekly basis, would likely have observed the dog's aggressive tendencies, and the defendant's claim that there was no dispute as to a material fact was further undermined by the existence of additional circumstantial evidence indicating that the defendant should have known that the dog had vicious propensities, as there was evidence that the dog, prior to biting the plaintiff, scratched the plaintiff's husband and bit the son of the dog's owner, that the dog's owner spoke openly about how the dog had been used as bait in dog fighting, and that the defendant had constructive knowledge of the dog's vicious propensities in the form of the defendant's own testimony that the dog once barked at him through the window while he was mowing the lawn and that he observed the dog pull toward him when the dog was walked on a leash; moreover, although the defendant testified that he never saw the dog display vicious tendencies, the trial court was presented with conflicting facts and was required to make a credibility determination, which the court was not permitted to make at the summary judgment stage, and, thus, the existence of those contradictory accounts of the dog's behavior thwarted summary judgment.

*(One judge concurring separately)*

Argued March 19—officially released August 27, 2019

*Procedural History*

Action to recover damages for the defendant's alleged negligence, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *Swienton, J.*, granted the defendant's motion for summary judgment and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed*; *further proceedings.*

*Matthew C. Eagan*, with whom was *James P. Sexton*, for the appellant (plaintiff).

*Audrey B. Staropoli*, for the appellee (defendant).

*Opinion*

PELLEGRINO, J. In this premises liability action, the plaintiff, Isha Sen, appeals from the summary judgment rendered in favor of the defendant, Kostas Tsiongas. On appeal, the plaintiff claims that the trial court erred in rendering summary judgment in favor of the defendant, who was the landlord of the apartment building in which the plaintiff lived, because there was a disputed issue of material fact as to whether the defendant should have known that the dog of one of the other tenants had vicious propensities. We agree with the plaintiff and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. At the relevant times, the plaintiff resided in the second floor apartment of a two unit apartment building at 396 Washington Street in Bristol (building). The defendant was the owner and landlord of the building. On September 18, 2015, at approximately 3:30 p.m., a dog that was owned by the building's first floor tenant bit the plaintiff in the building's common stairway. The plaintiff was taken by ambulance to the University of Connecticut Medical Center in Farmington, where she was treated for her injuries, which included lacerations to and numbness of her right hand.

On May 4, 2016, the plaintiff commenced the present action. In her operative complaint, the plaintiff alleged, inter alia, that the defendant was negligent in failing to maintain the building premises in a reasonably safe condition by allowing the first floor tenant to keep a vicious animal, failing to investigate the animal's history of viciousness, and failing to enforce a provision of the lease that prohibited pets on the premises.

On July 13, 2017, the defendant filed a motion for summary judgment, which was accompanied by an affidavit in which he averred in relevant part: "At no time prior to September 18, 2015, did I have any knowledge of the alleged vicious propensities of the dog involved in the incident. . . . At no time prior to September 18, 2015, did I observe the dog involved in the incident engage in vicious behavior, nor did [the dog's owner] or anyone else inform me that the dog had a propensity toward viciousness."

On August 30, 2017, the plaintiff filed an objection to the defendant's motion for summary judgment. In support of her objection, the plaintiff attached an affidavit in which she averred in relevant part: "[The first floor tenant] spoke openly about how the [dog] had been used as bait in dog fighting. . . . It is my opinion that the [dog] exhibited vicious qualities and that these qualities were apparent to any reasonable person who observed the dog. . . . The [dog] demonstrated aggression by barking, growling, and trying to escape the first floor porch whenever I walked up the stairs. . . . In

June of 2015, the [dog] broke out of the porch and advanced toward my husband, trying to bite him. The [dog] managed to scratch him before it was brought under control. . . . Before I was attacked, [the first floor tenant] informed me that the [dog] had bitten his seven year old son."

In support of her objection to the defendant's motion for summary judgment, the plaintiff also submitted a transcript of her deposition of the defendant, which was taken on July 31, 2017. During the deposition, the following exchange occurred between the plaintiff's counsel and the defendant:

"Q. You have a rule [in your lease agreement] that says, 'You will not have pets.' Why do you have that rule?

"A. Well, I have that rule more like for . . . pets cause damage . . . sometimes.

"Q. What kind of damage can pets cause?

"A. Well, going to the bathroom in the house, this and that, but if somebody asks me, can I get [a pet], or if [they] have a pet, and they're a good tenant . . . I'd say okay. You know.

\* \* \*

"Q. What kind of damage [other than property damage] is that?

"A. Well, I mean, if a dog or a cat scratches, you know, another human, yes.

"Q. And do you have that rule to protect other humans?

"A. No. It's mostly, I put it in, like I said, for more damage.

\* \* \*

"Q. All right. And can you tell me about [the first floor tenant] asking you about getting a dog?

"A. Yes. He asked me, he wanted to get a dog from The Humane Society and, then I said, okay.

\* \* \*

"Q. Do you know approximately when [the first floor tenant] got the dog?

"A. Probably 2014 . . . .

"Q. And . . . did you see the dog on the property?

"A. Well, I had seen the dog on the property when they had it out, walking the dog, but I [had] seen the dog inside when I'd go in to do any repairs in the apartments or collect rent.

\* \* \*

"Q. Approximately how often were you at the [building] after they got the dog in 2014?

"A. Well, I don't know. Probably, I'd say, once a week. . . .

"Q. Can you tell me about the dog, about what the dog was like?

"A. Well, like I said, when I was there, I would go into their apartment and the dog wouldn't bark, or growl, or anything like that to me. I'd see the dog outside when they . . . [had] it on the leash. You know, it pulled, like you know, of course, dogs come and want to see you, but that's about it. I mean, otherwise . . . one time when I was cutting the grass, the dog barked at me through the window, but all dogs do that, you know."

On September 5, 2017, the court held a hearing on the defendant's motion for summary judgment. On September 28, 2017, the court granted the defendant's motion for summary judgment and rendered judgment in favor of the defendant. In its memorandum of decision, the court stated: "The plaintiff has not put forth any evidence that the [defendant] had actual or constructive knowledge of the dog's alleged vicious propensities prior to the alleged attack." This appeal followed. Additional facts will be set forth as necessary.

The plaintiff claims that the trial court erred in rendering summary judgment in favor of the defendant because there was a disputed issue of material fact as to whether the defendant should have known that the dog had vicious propensities. Specifically, the plaintiff argues that the evidence, viewed in the light most favorable to her as the nonmoving party, demonstrates the existence of a disputed factual issue. We agree with the plaintiff.

"We begin our analysis with the standard of review applicable to a trial court's decision to grant a motion for summary judgment. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A party moving for summary judgment is held to a strict standard. . . . To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party

merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Anderson* v. *Dike*, 187 Conn. App. 405, 409–10, 202 A.3d 448, cert. denied, 331 Conn. 910, 203 A.3d 1245 (2019).

The following legal principles are also relevant to the plaintiff's claim. "As a matter of well settled common law, [i]t is, of course, the duty of a landlord to use reasonable care to keep in a reasonably safe condition the parts of the premises over which he reserves control. . . . The ultimate test of the duty is to be found in the reasonable foreseeability of harm resulting from a failure to exercise reasonable care to keep the premises reasonably safe. . . . The prevailing common-law conception of the dangerous conditions implicated in this duty, moreover, certainly is capacious enough readily to encompass threats from animals, including known vicious dogs. . . . [A] landlord, in exercising the closely analogous duty to alleviate dangerous conditions in areas of a premises over which it retains control, must take reasonable steps to alleviate the dangerous condition created by the presence of a dog with known vicious tendencies in the common areas of the property." (Citations omitted; internal quotation marks omitted.) *Giacalone* v. *Housing Authority*, 306 Conn. 399, 407–408, 51 A.3d 352 (2012).

"We note . . . that our conclusion that the traditional common-law duty of landlords to keep common areas in a reasonably safe condition applies to dangers posed by known dangerous dogs accords with the identical conclusion reached by courts in numerous other jurisdictions. See, e.g., *Fouts ex rel. Jensen* v. *Mason*, 592 N.W.2d 33, 40 (Iowa 1999) ('When the landlord knows or has reason to know of the existing dangerous condition, the landlord—to avoid liability—must act to protect those using the common area. . . . [H]ere, although she may not have had control over the dog, [the landlord] knew or *had reason to know* that the dog posed a danger to those in the common backyard. She therefore had a duty to take reasonable precautions to protect those lawfully in the common area.' . . .) . . . ." (Citations omitted; emphasis added.) *Giacalone* v. *Housing Authority*, supra, 306 Conn. 409–11.

The test for common-law premises liability looks to whether the landlord had actual *or* constructive knowledge of the dangerous condition on the premises. See, e.g., *Noebel* v. *Housing Authority*, 146 Conn. 197, 201, 148 A.2d 766 (1959) ("the test is: would the ordinarily prudent [person] in the position of the defendants, knowing what they knew or *should have known*, antici-

pate that harm of the general nature of that suffered was likely to result" [emphasis added]). Thus, in order to prevail on his motion for summary judgment, the defendant in the present case was required to demonstrate the absence of any genuine issue of material fact as to whether he knew, or *should have known,* of the dog's vicious propensities. *Giacalone* v. *Housing Authority*, supra, 306 Conn. 409–10.

In her affidavit, the plaintiff averred that the dog "demonstrated aggression by barking, growling, and trying to escape the first floor porch whenever [she] walked up the stairs." Additionally, the plaintiff averred: "It is my opinion that the [dog] exhibited vicious qualities and that these qualities were apparent to any reasonable person who observed the dog."[1] On the basis of the plaintiff's averments that the dog acted viciously toward her when she approached the building and displayed vicious tendencies that were visible to all those who observed it, a jury could reasonably infer that the defendant, who came to the building on a weekly basis, would likely have observed the dog's aggressive tendencies. See *Tuccio Development, Inc.* v. *Neumann*, 111 Conn. App. 588, 594, 960 A.2d 1071 (2008) (at summary judgment stage, "court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion" [internal quotation marks omitted]); *Solesky* v. *Tracey*, 198 Md. App. 292, 325, 17 A.3d 718 (2011) ("[T]here was uncontroverted evidence that the landlord had visited the property and had seen these particular pit bulls [firsthand]. In light of a neighbor's testimony that 'anybody' who walked near these dogs would experience aggression from the dogs, the jury could have rationally inferred that the landlord, too, observed vicious behavior when she . . . visited the premises."), aff'd on other grounds, 427 Md. 627, 50 A.3d 1075 (2012), superseded by statute as stated in *Phillips* v. *J Bar W, Inc.*, Docket No. 1167, 2017 WL 4876762, *4 (Md. Spec. App. October 27, 2017). Although a jury could reasonably infer that the defendant had the opportunity to observe the dog's aggressive tendencies, the defendant testified that he never saw the dog display vicious tendencies. Thus, the trial court in the present case was presented with conflicting facts and was required to make a credibility determination. Because the court is not permitted to make such a credibility determination at the summary judgment stage, the existence of these contradictory accounts of the dog's behavior thwarts summary judgment. See, e.g., *Straw Pond Associates, LLC* v. *Fitzpatrick, Mariano & Santos, P.C.*, 167 Conn. App. 691, 710, 145 A.3d 292 ("In summary judgment, the court's role is not to weigh the credibility of the parties, which falls within the province of the finder of fact. . . . When a court, in ruling on a motion for summary judgment, is confronted with conflicting facts, resolution and interpretation of which would require determinations of credibility, summary

judgment is not appropriate." [Citation omitted.]), cert. denied, 323 Conn. 930, 150 A.3d 231 (2016).

The defendant's argument that there was no dispute as to a material fact before the trial court is further undermined by the existence of additional circumstantial evidence indicating that the defendant should have known that the dog had vicious propensities. "Circumstantial evidence is, of course, also available on the question of notice or knowledge of the specific defects . . . ." *Cruz* v. *Drezek*, 175 Conn. 230, 235–36, 397 A.2d 1335 (1978). In the present case, there was evidence that, prior to biting the plaintiff on September 18, 2015, the dog scratched the plaintiff's husband and bit the first floor tenant's son.

Moreover, the plaintiff averred that the dog's owner "spoke openly about how the [dog] had been used as bait in dog fighting." Although this evidence came in through the plaintiff's affidavit, dismissing these statements out of hand amounts to a credibility determination and, therefore, runs afoul of the well established rule that "[w]hen deciding a summary judgment motion, a trial court may not resolve credibility questions raised by affidavits or deposition testimony submitted by the parties." *Doe* v. *West Hartford*, 328 Conn. 172, 197, 177 A.3d 1128 (2018); see id., 196 (concluding that trial court erred when it dismissed "out of hand" deposition testimony that created genuine issue of material fact).

Moreover, there was evidence that the defendant had constructive knowledge of the dog's vicious propensities in the form of the defendant's own testimony that the dog once barked at him through the window while he was mowing the lawn and that he observed the dog pull toward him when the dog was walked on a leash. Although the defendant described these behaviors as things "all dogs" do, this evidence, in conjunction with the evidence described in the preceding paragraphs of this decision, could reasonably be viewed by the jury as indicating that the defendant had constructive notice of the dog's vicious propensities. On the basis of the foregoing, we conclude that there is a disputed issue of material fact and, therefore, that summary judgment was improper.[2]

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion, ELGO, J., concurred.

[1] We do not believe that this statement constitutes inadmissible evidence. Although a lay witness is generally not permitted to give opinion testimony, "[t]he use of such words as 'I think,' 'probably,' or 'it is my impression' are not uncommon in lay testimony and do not make such evidence opinion unless it is clearly so from all the circumstances." E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 7.1.2, p. 434. Because evidence is to be construed in favor of the nonmoving party in considering a motion for summary judgment, and because the aforementioned principle is relevant to this issue, we conclude that, although the plaintiff prefaced her statement by stating "[i]t is my opinion," the statement constituted a factual assertion regarding the dog's behavior rather than an opinion.

[2] Because we reached this conclusion without considering the breed of

the dog, we need not address the defendant's argument that the trial court should have considered the fact that the dog was a pit bull in assessing whether the defendant had constructive notice of the dog's viciousness. We, therefore, see no reason to determine the breed issue and do not agree with Judge Prescott's concurrence that the breed of the dog should be considered in assessing premises liability, in the absence of the articulation of such a rule by our Supreme Court or legislature.

———————————————————